ALFRED MOLWAY, Appellee, *vs.* THE CITY OF CHICAGO, Appellant.

*Opinion filed April 23, 1909.*

1. MUNICIPAL CORPORATIONS—*city is not an insurer of safety of its streets.* A city is not bound to keep its streets absolutely safe or in reasonably safe condition, but is only bound to use ordinary care to keep the streets reasonably safe for ordinary travel thereon by persons using due care for their safety.

2. SAME—*ordinary travel on street includes use of bicycles and automobiles.* A person riding a bicycle or driving an automobile in a public street is using the street for the purpose of ordinary travel, and while a city is not bound to use reasonable care to keep its streets in reasonably safe condition with a view to bicycles and automobiles alone, yet it must do so with a view to vehicles in general, which includes bicycles and automobiles.

3. SAME—*safety of streets for carriages and wagons is not the sole test of liability.* The mere fact that a street may be in reasonably safe condition for travel by means of carriages and wagons does not necessarily relieve a city from liability for damages for an injury to a bicyclist, received by riding into a deep chuck-hole, which was filled with water at the time.

4. SAME—*persons using horses have no superior rights in highway.* Persons using horses as a means of travel have no rights in a street or highway which are superior to the rights of persons using other modes of travel, such as bicycles and automobiles; and in constructing a street or keeping it in repair municipalities are bound to take into consideration its probable use by all vehicles in common use, although special precautions as to a particular class of vehicles are not required.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. ROBERT W. WRIGHT, Judge, presiding.

EDWARD J. BRUNDAGE, Corporation Counsel, and JOHN R. CAVERLY, City Attorney, (GEORGE L. REKER, and EDWARD C. FITCH, of counsel,) for appellant.

HORTON & MILLER, for appellee.

Mr. JUSTICE CARTER delivered the opinion of the court:

Appellee recovered against appellant, in the superior court of Cook county, a judgment for $6000 in an action on the case for personal injuries. The Appellate Court for the First District, on appeal, affirmed that judgment, and this appeal followed.

March 23, 1905, appellee, a boy about fifteen years of age, was riding north in Wells street, Chicago, on his bicycle, and near the intersection of Ontario street he rode into a hole in the asphalt pavement and was thrown from the wheel in such a manner as to dislocate and permanently injure his left hip. Some years prior thereto he had sustained an injury which necessitated the amputation of his left leg about three inches below the knee, and thereafter he procured an artificial leg and became so proficient in its use that he was able to ride a bicycle, play ball and engage in boyhood sports. On the day in question it had been raining and when he started for home it was drizzling. The hole in question was from ten to fifteen inches deep, a foot

or more wide and about two feet long. It was filled with water, and appellee did not know it was there until the bicycle ran into it. The evidence shows that it had been in the pavement some two or three months before the accident.

The court instructed the jury, at the request of appellant, that the appellee could not recover unless they believed that it had been proved, by a preponderance of the evidence, that "the street in question, at the time and place of the alleged accident, was not reasonably safe for ordinary travel thereon by persons using due care and caution for their safety;" and also instructed the jury that "a city is not bound, under the law, to keep its streets absolutely safe, nor is it bound, under the law, to keep them in reasonably safe condition. It is only bound to use reasonable care to keep its streets reasonably safe for ordinary travel thereon by persons using due care and caution for their safety." These instructions state the law with substantial accuracy. (*City of Salem* v. *Webster,* 192 Ill. 369; *Kohlhof* v. *City of Chicago,* 192 id. 249; *City of Rock Island* v. *Gingles,* 217 id. 185; *Village of Lockport* v. *Licht,* 221 id. 35; 2 Dillon on Mun. Corp.—4th ed.—sec. 1019; 1 Shearman & Redfield on Negligence,—5th ed.—sec. 367.) The appellant further asked the court to instruct the jury that "ordinary travel does not include the use of a street by one riding a bicycle thereon. * * * A person when riding a bicycle on a street is not using said street for the purpose of ordinary travel thereon." It also asked the following instruction:

"If you believe, from the evidence, that the street in question, at the time and place of the alleged accident, was reasonably safe for ordinary travel thereon by persons riding in vehicles, such as wagons, carriages and other similar vehicles, then you are instructed that you should find the defendant, city of Chicago, not guilty, whether you believe that said street at said time and place was or was not reasonably safe for travel by a person riding a bicycle thereon."

The only ground for reversal urged by appellant is the refusal of these last instructions by the trial court.

Does ordinary travel include the use of a street by one riding a bicycle? By the great weight of authority a bicycle is a vehicle of such a nature that it may be properly used upon our highways. (*North Chicago Street Railroad Co. v. Cossar,* 203 Ill. 608; *Holland* v. *Bartch,* 120 Ind. 46; *Town of Whiting* v. *Doob,* 152 id. 157; *Lee* v. *City of Port Huron,* 128 Mich. 533; *Thompson* v. *Dodge,* 58 Minn. 555; *Taylor* v. *Union Traction Co.* 184 Pa. 465.) "Being a vehicle, its proper place is upon the street or roadway and not upon the sidewalk," unless otherwise provided by statute. "Bicycles are subject to the 'law of the road,' and their use upon highways may be regulated by the legislature." (Elliott on Roads and Streets, p. 635.)

When not based upon a special statutory provision, (as certain of the following cases were,) we are inclined to doubt the soundness of the rule laid down by some courts, (*Leslie* v. *City of Grand Rapids,* 120 Mich. 28; *Sutphen* v. *Town of North Hempstead,* 89 Hun, 409; *Richardson* v. *Danvers,* 176 Mass. 413; *Rust* v. *Inhabitants of Essex,* 182 id. 313,) that a cyclist must take the road as he finds it, provided it is safe for an ordinary horse-drawn vehicle, and that in the absence of legislation the courts will not require the public authorities to keep streets and highways safe for bicycles, automobiles and vehicles of like character. We think the sounder rule is laid down by one of these courts in the recent decision of *Doherty* v. *Town of Ayer,* 83 N. E. Rep. (Mass.) 677, where that court held that "persons may lawfully ride in automobiles, as they may lawfully ride on bicycles, and cities and towns are bound to keep their ways reasonably safe and convenient for travel generally, including that properly undertaken upon such vehicles. * * * But if their ways are reasonably safe and convenient for travel generally, they are not liable for a failure to make special provisions, required only for

the safety and convenience of persons using automobiles or bicycles." In *Curry* v. *Erie City,* 209 Pa. St. 283, it was held in an action by a girl of fourteen to recover damages sustained by a fall from a bicycle, that a verdict and judgment for plaintiff will be sustained, the evidence showing that the accident occurred on an asphalted street and was caused by the subsidence of the foundation, so that the surface of the asphalt had sunk but was not broken, leaving a depression of which the rider had no knowledge until she came near it, and that under such circumstances the question of negligence was for the jury.

Some authorities apparently assume that to make the highways or streets reasonably safe for bicyclists using reasonable care would impose more onerous duties upon municipalities than to keep them in repair for pedestrians or horse-drawn vehicles. We do not think that this conclusion, under all conditions and circumstances, necessarily follows. While it is undeniable that certain defects in the highway may be harmless to a horse-drawn vehicle and dangerous to a bicycle, on the other hand it may well be argued that many times the care required of public officials to make a highway perfectly safe for a bicycle would be less than it would for a vehicle drawn by horses. A bicycle, by its compactness and readiness of control, renders its rider often more favorably situated than the drivers of loaded wagons, or even of light carriages, to avoid dangerous places or collisions with other vehicles. An asphalt pavement, even when level, is practically impassable for a horse ordinarily shod when the pavement is covered with a slight coating of ice or sleet, and yet a cyclist, on account of his rubber-tired vehicle, can pass over it readily. When highways are not restricted by their dedication or statute to some particular mode of use they are open to all suitable methods of travel. "A street is made for the passage of persons and property, and the law cannot define what exclusive means of transportation and passage shall be used. * * * To

say that a new mode of passage shall be banished from the streets, no matter how much the general good may require it, simply because streets were not so used in the days of Blackstone, would hardly comport with the advancement and enlightenment of the present age." (*Moses* v. *Pittsburg, Ft. Wayne and Chicago Railroad Co.* 21 Ill. 515.) To hold that the standard of safety required of public authorities as to streets and highways for all methods of travel should be the safety required for a horse-drawn carriage, or of any other particular vehicle, would not accord with wise public policy. "If there is any one fact established in the history of society and of the law itself, it is that the mode of exercising this easement is expansive, developing and growing as civilization advances. In the most primitive state of society the conception of a highway was merely a foot-path; in a slightly more advanced state it included the idea of a way for pack animals; and next a way for vehicles drawn by animals,—constituting, respectively, the 'iter,' the 'actus' and the 'via' of the Romans. And thus the methods of using public highways expanded with the growth of civilization, until to-day our urban highways are devoted to a variety of uses not known in former times and never dreamed of by the owners of the soil when the public easement was acquired." (*Cater* v. *Northwestern Telephone Exchange Co.* 60 Minn. 539.) In the early history of this country the great highways by water were supposed to be of such importance as to entitle those who used them to superior rights over those using land highways which might cross them, but long ago it was decided that the rights of vessel owners in navigable streams must submit to the incidental inconvenience of allowing those streams to be bridged for public traffic. Persons using horses as a means of travel have no superior rights in a highway to those who rightfully make use of it for other methods of travel. "Improved methods of locomotion are perfectly admissible, if any shall be discovered, and they cannot be excluded from

the existing public roads, provided their use is consistent with the present methods. A highway is a public way for the use of the public in general, for traffic and passage, without distinction." *Macomber* v. *Nichols,* 34 Mich. 212.

The law does not require that a road shall be absolutely safe for bicycling purposes, any more than that it shall be absolutely safe for other methods of travel. The defect which renders municipalities liable must be such as would make the street or highway unsafe for the use of vehicles in general. In constructing and keeping in repair a street, the public officials are bound to take into consideration the probability that it will be used by all vehicles that are in common use and they must make it reasonably safe and convenient for all such uses, and in so doing are not required to take into consideration injuries to machines, vehicles or persons which may occur from causes which cannot be reasonably foreseen or prevented. Clementson on Road Rights and Liabilities of Wheelmen, sec. 77; *Fox* v. *Clarke,* 1 Am. & Eng. Ann. Cas. (R. I.) 548, and note.

No rigid rule can be laid down as to defects in highways or streets for which municipalities will be liable or as to the degree of care required by the person injured. Objects negligently permitted to be placed in highways which are calculated to frighten horses of ordinary gentleness may render such authorities liable for an injury, though there might be no liability if the objects were not naturally calculated to frighten horses. (Elliott on Roads and Streets, p. 447.) Municipal corporations or road commissioners are not insurers against accidents. The object to be secured is reasonable safety for travel, considering the amount and kind of travel which may fairly be expected upon the particular road. (*Kelsey* v. *Glover,* 15 Vt. 708.) A highway in the country need not be of the same character as a street in a large city. The authorities are not required to provide a street or highway equal in smoothness to a driving or racing track for either horses, bicycles or automobiles. A

sharp stone, a tack, a bit of glass or coal in a road might puncture a bicycle tire or cause an injury to the rider, but the authorities are not ordinarily liable for or required to insure against such accidents. A small loose stone on a smooth pavement might cause a bicycle to fall, and it also might, under certain circumstances, if situated on the edge of a steep embankment, cause a horse-drawn vehicle to topple over. Just what degree of care the rider of a bicycle, the driver of a team or the chauffeur of an automobile must exercise must depend very largely upon the character of the road and the surroundings in each special case. A person may ride a bicycle without a light during the daytime without being charged with negligence, when he would be guilty of negligence if he were to so ride his bicycle at night on a public thoroughfare, where he is liable to meet moving vehicles or pedestrians or where he might be injured by riding into a depression in the street. (*Cook* v. *Fogarty,* 103 Iowa, 500.) Every defect in a street or highway that causes an injury may not be actionable. "It is sufficient, we think, if the streets (which include sidewalks and bridges thereon) are in a reasonably safe condition for travel in the ordinary modes, by night as well as by day; and whether they are so or not is a practical question, to be determined in each case by the particular circumstances." (2 Dillon on Mun. Corp. sec. 1019; *Kohlhof* v. *City of Chicago, supra.*) Bicycles being subject to the rules of law governing other vehicles, this general rule as to liability of public authorities for injuries to bicyclists can be as reasonably and safely applied to them as to other vehicles.

This court has recently held in *Harder's Storage Co.* v. *City of Chicago,* 235 Ill. 58, and *Harder* v. *City of Chicago,* id. 294, that automobiles, as well as wagons, could be taxed and the money used by the public authorities in paying the costs and expenses of street and alley improvements or other repairs. It would certainly be most illogical, after this holding, to decide that persons using automobiles are not using

the streets for the purposes of ordinary travel. It is a matter of common knowledge that bicycles have for years been in common use on the streets of Chicago and other cities. We think riding a bicycle on a street is an ordinary mode of travel.

The instructions in question were properly refused. The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*