A. S. BARNES, ADMINISTRATOR OF THE ESTATE OF ELMO D. BARNES, DECEASED, v. TOWN OF WILSON, A MUNICIPAL CORPORATION.

(Filed 28 February, 1940.)

**1. Trial § 22b—**

Upon motion to nonsuit, the evidence tending to support plaintiff's cause of action will be considered in the light most favorable to plaintiff, and he is entitled to every reasonable intendment thereon and every reasonable inference therefrom. C. S., 567.

**2. Municipal Corporations § 14—Evidence of municipality's negligent failure to use due care to keep street in reasonably safe condition held for jury.**

The evidence tended to show that defendant municipality had scraped the dirt street involved in this action three months before the accident, that a manhole cover about two feet in circumference was allowed to remain in a depression about five inches deep, with hard earth surrounding it, that the manhole was east of the center of the street, and that plaintiff's intestate, driving a motorcycle on his right side of the street at a speed of about twenty-five miles per hour, struck the depression, causing his motorcycle to bounce and get out of control, resulting in fatal injury. *Held:* The evidence was properly submitted to the jury on the issue of defendant municipality's negligence in failing to exercise due diligence to keep its street in a reasonably safe condition.

**3. Same—Duty of municipality to keep streets in reasonably safe condition.**

While a municipality is not an insurer of the safety of its streets, it is under duty to make reasonable inspection and to repair dangerous defects

and conditions of which it has notice, either actual or implied, regardless of whether the defects are caused by it or by others, and, in the exercise of such reasonable diligence, to keep its streets in a reasonably safe condition for travel by all vehicles having the right to use the streets, whether automobiles, motorcycles, bicycles or wagons.

**4. Same—**

Nonsuit on the ground of contributory negligence on the part of plaintiff's intestate, killed in an accident occurring when the motorcycle he was riding hit a manhole cover in a depression in a street, *held* properly denied.

**5. Appeal and Error § 39e: Death § 8—Charge on issue of damages for wrongful death held without prejudicial error when construed as a whole.**

In this action for wrongful death, the charge on the issue of damages *is held* not to contain prejudicial error because of the use by the court of the words "gross income" in stating the rule for the ascertainment of the present cash value of the net pecuniary worth of intestate, since, construing the charge as a whole, it is apparent that the court was not referring to the total amount intestate would have earned during his life expectancy, but to such sum less his living expenses. An instruction to the effect that interest for the period of intestate's life expectancy should be deducted from his net pecuniary worth to ascertain the present cash value of his net pecuniary worth, disapproved, since intestate's earnings would not be postponed until the end of his life expectancy.

**6. Appeal and Error § 39a—**

An error in favor of appellant cannot entitle him to a new trial.

**7. Appeal and Error § 29—**

Only exceptive assignments of error brought forward in appellant's brief will be considered. Rule of Practice in the Supreme Court, No. 28.

BARNHILL, J., dissenting.

STACY, C. J., and WINBORNE, J., concur in dissent.

APPEAL by defendant from *Thompson, J.,* at June Term, 1939, of WILSON. No error.

This is an action for actionable negligence brought by plaintiff, administrator, for killing his intestate, Elmo D. Barnes, alleging damage; the alleged injury being caused by the negligence, or the lack of due care, of the defendant in not keeping a manhole in its street in a reasonably safe condition, which the defendant knew, or in the exercise of due care should have known that it caused a direct hazard to persons operating motor vehicles and motorcycles, and that said negligence was the proximate cause of plaintiff's intestate being killed. Plaintiff's intestate was riding a motorcycle, which he was accustomed to riding, at the time of the fatal injury. The defendant denied negligence and set up the plea of contributory negligence.

The evidence on the part of plaintiff was to the effect that Elmo D. Barnes, plaintiff's intestate, was riding a motorcycle on Maury Street in the city of Wilson, which runs North and South. The street is four blocks long and is 20 feet wide at the manhole where the fatal injury occurred. It is 8 feet from the center of the manhole to the ditch on the east side and 12 feet to the west side of the street. A part of the street is soft but at the place where the accident occurred the ground approaching the manhole was hard. There are dwelling houses on both sides of the street. The manhole cover was about 5 or more inches deeper or lower than the street; the top lower than the street and about 5 inches larger than the manhole, in the shape of a bowl. The cover of the manhole is about 20 inches and the cast around it makes it about 2 feet. The drop was about 5 inches. The town worked the street with a scraper 3 months before the accident.

Henry Denkins testified, in part: "Elmo D. Barnes was running about 25 miles an hour. Manhole in the middle of the street, or whatever it was, and when he hit that hole the front wheel bounced up that high. When the front wheel bounced up the back wheel done the same thing and he lost control of it and the motorcycle throwed him. He was in a straddled position; the motorcycle on top of him. He made no evidence to kick, lying on this side, looked like this side of his eye was about out and his ears and nose bleeding. . . . I looked at the manhole and it was about like that below the surface of the street; about 6 inches or 5½. Kinder round; that is the place he hit riding. The motorcycle went about 10 steps before it stopped. He fell kinder to the left of the center of the road; manhole kinder on the side. The manhole was kinder on the right side the way he was going."

Booker T. Denkins testified, in part: "Saw this man riding the motorcycle. He came across the manhole riding about 25 miles an hour and his back wheels went into a bounce as the front wheels reared up and it throwed him off and the motorcycle went about 10 feet. There was a drop of about 6 inches; I didn't measure it; 6 inches is about a full hand. It was in the shape of a bowl. The general nature of the soil was real hard."

The accident occurred about 6:00 o'clock in the evening of 16 September, 1938. The motorcycle had no lights on it, it was not dark enough for lights. It was in evidence that Elmo D. Barnes worked for different concerns and earned from $18.00 to $25.00 per week.

Mrs. Elmo D. Barnes testified, in part: "I would say his own living expenses at the time of his death and for a year or two before that were approximately between $10.00 and $15.00. I would say that his actual living expenses for a year before his death were $15.00 per week. He was in good health; good habits; raised in Wilson. He lived about one

mile from the Imperial Plant; he walked to work and did not own a motorcycle. He had ridden a motorcycle before the 16th day of September, off and on since we were married. . . . He died Sunday night at 11:30, the 18th of September. The accident occurred Friday, the 16th. He lacked 6 days of being 27 years old."

The issues submitted to the jury and their answers thereto were as follows:

"1. Was the plaintiff's intestate injured and killed by the defendant, as alleged? Ans.: 'Yes.'

"2. Did the plaintiff's intestate, by his own negligence, contribute to his injury, as alleged in the answer? Ans.: 'No.'

"3. What damage, if any, is plaintiff entitled to recover of the defendant? Ans.: '$8,000.' "

The court rendered judgment on the verdict. The defendant made numerous exceptions and assignments of error and appealed to the Supreme Court. The material ones and necessary facts will be considered in the opinion.

*Charles M. Griffin, D. M. Hill, and Donnell Gilliam for plaintiff.*
*Finch, Rand & Finch and W. A. Lucas for defendant.*

CLARKSON, J. At the close of plaintiff's evidence and at the conclusion of all the evidence, the defendant made motions in the court below for judgment as in case of nonsuit. C. S., 567. The court below refused these motions and in this we can see no error.

The evidence which makes for plaintiff's claim, or tends to support his cause of action, is to be taken in its most favorable light for the plaintiff, and he is entitled to the benefit of every reasonable intendment upon the evidence, and every reasonable inference to be drawn therefrom.

In 28 Cyc., pp. 1358, 1359, 1360, the rule as to reasonable care and safety is thus stated: "Where the municipality is chargeable with notice or knowledge of defects or obstructions, the general municipal duty to exercise ordinary care to keep its streets in a reasonably safe condition is continuing and constant. Its liability is for negligence, however, and for negligence only. It is not liable for damages for every accident that may occur within its limits; it is not an insurer against all defects or obstructions in its streets and is not required or expected to do everything that human energy or ingenuity can do to prevent injury to the citizen; but its duty is to exercise reasonable care, and only this degree of care, to make and maintain its streets and walks reasonably safe for the purposes to which such respective parts are devoted, and for the use of persons traveling thereon in the usual modes, by day or by night, and who are themselves in the exercise of reasonable care, whether the defect

7—217

or condition causing the injury was created by the municipality itself or was created by some third person or by natural causes, and should in the exercise of ordinary care have been discovered and repaired. After it has notice, either express or implied, of the existence of defects or obstructions, no matter how they are caused, the obligation immediately arises to exercise reasonable care to restore the street, that it may again be reasonably safe for ordinary travel." The duty above set forth is on all who have the right to use its streets, automobiles, motorcycles, bicycles, wagons, buggies, etc.

In an action for personal injury from stepping into a hole in a sidewalk, defendant's negligence in removing a water meter and leaving a hole in the sidewalk four to seven inches deep for from 6 to 12 months held for the jury. *Sehorn v. Charlotte,* 171 N. C., 540. Whether hydrant attached to building and projecting nine inches over sidewalk constitutes nuisance is jury question. *Swinson v. Realty Co.,* 200 N. C., 276.

In *Gasque v. Asheville,* 207 N. C., 821, the plaintiff was injured by stepping on the lid of a partly covered water meter box about 6 inches from the outside of the street. It tilted back and forth—the lid did not fit. The occurrence was about 9 o'clock at night in April. The charge of the court below (by Schenck, J., then on the Superior Court bench) was approved by this Court.

"The governing authorities of a city are charged with the duty of keeping their streets and sidewalks and water meter boxes in a reasonably safe condition; and their duty does not end with putting them in a safe and sound condition originally, but they are required to keep them so to the extent that this can be accomplished by proper and reasonable care and continuing supervision. It is the duty of the city of Asheville to keep the streets, including the sidewalks and meter boxes thereon and nearby, in proper repair; that is, in such condition as that the people passing and repassing over them might at all times do so with reasonable care, speed and safety. It is not the duty of the city, however, to warrant that the condition of its streets and sidewalks and meter boxes shall be at all times absolutely safe. The city is not an insurer of their safety; the city is only required to exercise ordinary or reasonable care to make them safe. The city is only responsible for negligent breach of duty and to establish such responsibility it is not sufficient to show that a defect existed and an injury has been caused thereby. It must be further shown that the officers of the city knew or by the exercise of due care might have known of the defect, and that the character of the defect was such that injury to travellers therefrom might be reasonably anticipated. It will be observed that actual notice of a dangerous condition or defective structure is not required, but notice may be implied from

circumstances, and will be imputed to the city if its officers could have discovered the defect by the exercise of due care or proper diligence. Actual notice is not a necessary condition to render the city liable for a defect which causes an injury. Under its duty of actual diligence, a municipal corporation is bound to know the condition of its sidewalks or meter boxes, where the opportunity of such knowledge exists; the opportunity of knowing stands for actual knowledge. A city is presumed to have notice of such defects as it might have discovered by due care or reasonable diligence, but the most that is required of a city is the use of ordinary diligence by making inspections and examinations with reasonable frequency and due care to ascertain and remedy them. It is the duty of a city to exercise due care to keep its streets and sidewalks and meter boxes in good condition and repair, so that they will be safe for the use of its inhabitants, or those entitled and having occasion to use them. If they become unfit for use by reason of defects which could not be anticipated, and consequently guarded against, the municipality must have some notice of the defect before it can be held liable for any injury proximately caused thereby. Sometimes notice of such defects is actual or express, and, again, sometimes such notice is constructive or implied. It is the duty of a city to exercise a reasonable and continuing supervision over its streets and sidewalks in order that it may know they are kept in safe condition." *Bailey v. Winston,* 157 N. C., 252 (257); *Bailey v. Asheville,* 180 N. C., 645; *Markham v. Improvement Co.,* 201 N. C., 117; *Debnam v. Whiteville,* 211 N. C., 618; *Ferguson v. Asheville,* 213 N. C., 569.

Nonsuit on the ground of contributory negligence was properly denied. *Cole v. Koonce,* 214 N. C., 188; *Ferguson v. Asheville, supra.* The issue addressed to this defense was submitted to the jury with appropriate instructions, to which no exception was noted.

The defendant also noted exception to the charge on the issue of damages, and contends that the use of the phrase "this gross amount" in referring to the sum from which the present cash value of the pecuniary worth of the deceased was to be ascertained, was erroneous and constituted reversible error. While these words standing alone and disconnected from the words immediately preceding might be so construed, however, taken contextually, we find the charge free from error prejudicial to defendant. After charging the jury in accord with the rule laid down in *Mendenhall v. R. R.,* 123 N. C., 275, and *White v. R. R.,* 216 N. C., 79, the trial judge used this language: "I charge you that the measure of damages in the case is the present value of the net pecuniary worth of the deceased to be ascertained by deducting the cost of his own living and expenditures from the gross income, based upon his life expectancy. . . . Now, after you have fixed upon the amount repre-

BARNES v. WILSON.

senting the yearly earnings of the deceased, that is to say, his net annual income and the number of years he probably would have lived, you can, by multiplying the one by the other, determine approximately what would have been the gross amount of his net income during his whole life. This amount, this gross amount, must be reduced to its present cash value which would necessarily be less than the gross amount, and which may be arrived at by dividing the gross sum by one dollar plus the legal rate of interest (6%), for the expectancy years of the deceased, as the present worth of a sum payable at some future period without interest is such an amount as being put at interest will amount to the sum at the period when it becomes due."

It is thus apparent that the words "this gross amount" must be taken in connection with the sentence immediately preceding, and the pronoun "this" understood to refer to the gross amount of his net income during life. The use of the mathematical formula employed in the instant case was criticized in *Ward v. R. R.,* 161 N. C., 179, and it was there recommended that its use be discontinued. In applying it here the base period employed was the entire period of the expectancy, which was erroneous, as the contemplated earnings would not have been postponed until the end of decedent's life. However, this error was one in favor of the appealing defendant and against plaintiff, and, as stated by *Hoke, J.,* in *Ward v. R. R., supra* (187), "The mistake in the charge being in his favor, it may not be held for reversible error." However, the defendant makes no point as to this method of calculation. The only exception to the charge on the issue of damages referred to in defendant's brief relates to the use of the word "gross" hereinbefore discussed. Rule 28.

We conclude that in the trial below there were no prejudicial or reversible errors.

No error.

BARNHILL, J., dissenting: The manhole of Maury Street (on which the deceased was traveling on a motorcycle) was located in the street. It was constructed so that its top was below the surface of the street as is usual when located in an unimproved street. It was a part of the system of public utilities maintained by the town for the promotion of the health and convenience of its citizens and it was constructed in accord with approved engineering practice. It has existed in its present location, so far as the evidence discloses, from the time of its original construction as a part of the original plan. Furnishing the convenience, of which the manhole was a part, in promoting the health of the community, was a governmental function. For this reason it may be that the defendant is not chargeable with negligence by reason of the condition complained of which was incidental thereto. *Klingenberg v. Raleigh,*

212 N. C., 549, 194 S. E., 297. As this question is not presented, I refrain from expressing an opinion.

A municipality is only required to exercise ordinary care to maintain that portion of its streets set apart for vehicular traffic in a reasonably safe condition for those traveling on vehicles who exercise ordinary care for their own safety. *Oliver v. Raleigh,* 212 N. C., 465, 193 S. E., 853; *Ferguson v. Asheville,* 213 N. C., 569, 197 S. E., 146. "The object to be secured is reasonable safety for travel considering the amount and class of travel which may fairly be expected upon the particular road." *Kelsey v. Glover,* 15 Vt., 708; *Molway v. Chicago,* 239 Ill., 486, 88 N. E., 486.

The duty of a municipality is to exercise reasonable care to keep highways in suitable condition for ordinary travel; *Koch v. Denver,* 133 Pac., 1119, and not to take extraordinary precautions to maintain them free from ruts, holes and unevenness specially adapted to use thereon of bicycles, tricycles, etc. McQuillin Mun. Corp. (2d), Vol. 7, sec. 2948. "If the streets of cities and towns 'are reasonably safe and convenient for travel generally they are not liable for a failure to make special provisions required only for the safety and convenience of persons using . . . bicycles.'" *Bethel v. St. Joseph,* 171 S. W. (Mo.), 42; *Molway v. Chicago,* 239 Ill., 486, 88 N. E., 486. The defect which renders municipalities liable must be such as would make a street or highway unsafe for the use of vehicles generally. *Molway v. Chicago, supra,* 23 L. R. A. (N. S.), 543. A municipality owes no greater duty to bicyclists than to persons riding or driving a horse. *Bills v. Salt Lake City,* 38 Utah, 507, 109 Pac., 745. The street need not be kept so that it will be specially adapted to the use of bicycles. *Pueblo v. Smith,* 57 Col., 500, 143 Pac., 281; *Emelle v. Salt Lake City,* 54 Utah, 360, 181 Pac., 266. This rule would apply with equal force to two-wheel, motor-driven motorcycles.

In determining whether ordinary care has been exercised a distinction must be drawn between improved and unimproved streets. Likewise, consideration must be given to the location—whether it is in the thickly settled section of the town or in its outlying territory where its use is not so general. What is ordinary care is to be determined from the circumstances. Dirt streets cannot be maintained with that degree of smoothness and regularity a traveler has a right to anticipate in a paved street. Both the elements and the traffic of vehicles will cause irregularities, depressions, bumps and ridges.

In *Koch v. Denver, supra,* the evidence disclosed three depressions in close proximity, one of which ranged from 5 to 8 inches in depth, one 3 to 4 inches in depth about 18 inches long and from 8 to 10 inches wide, and the third from 1 to 2 inches deep. The court said "such

depressions can hardly be avoided on dirt thoroughfares." Of this fact a motorist, when using a dirt street, must take notice.

The manhole was to the right of the center of the street going in the direction the deceased was traveling. The dirt was worn away so that the irregularity in the street caused by the location of the manhole below the level of the surface was saucer or basin shaped and its depth was estimated by witnesses to be from 4 to 6 inches. Actual measurement disclosed that when a straight edge 6 feet long was placed over it the hole was 2 inches deep and when a strip 12 feet long was used the hole was 4 inches deep. There was at least 7 feet of clear and unobstructed road to the right of the hole and at least 11 feet to the left. It was not concealed but could be easily observed and seen by those using the street. So testified witnesses for the plaintiff and for the defendant, and there is no evidence *contra.* And, as stated, ample space existed on each side for vehicles to pass in safety. Under these conditions it did not constitute such a defect as would cause a person of ordinary prudence to anticipate that it was dangerous or likely to cause injury to occupants of vehicles using the street. *Ferguson v. Asheville, supra; Houston v. Monroe,* 213 N. C., 788, 197 S. E., 571, 13 R. C. L., 398.

It is only against danger which can or ought to be anticipated in the exercise of ordinary care and prudence that the municipality is bound to guard. *Dillon v. Raleigh,* 124 N. C., 184, 32 S. E., 548; *Fitzgerald v. Concord,* 140 N. C., 110, 52 S. E., 309; *Sehorn v. Charlotte,* 171 N. C., 541, 88 S. E., 782; *Ferguson v. Asheville, supra.*

I am of the opinion, therefore, that there is no sufficient evidence of negligence on the part of the defendant.

Even if negligence be conceded the plaintiff should not be permitted to recover. The street on which deceased was traveling was not a principal thoroughfare—nor was it a main artery for the residential section. It was a graded, unimproved "top soil" dirt street only four blocks long, located in the suburban manufacturing and residential section connecting the Southern Oil Company plant with Barnes Street—apparently opened and maintained primarily as an outlet for the Southern Cotton Oil Company. The deceased was riding a motorcycle—a two-wheel vehicle, much more easily thrown out of control than the average conveyance. Under these conditions it was his duty to anticipate irregularities in the street and exercise commensurate care for his own safety.

A person traveling on a street is required, in the exercise of due care, to use his faculties to discover and avoid dangerous defects and obstructions, the care required being commensurate with the danger or appearance thereof. *Rollins v. Winston-Salem,* 176 N. C., 411, 97 S. E., 211; *Russell v. Monroe,* 116 N. C., 721, 21 S. E., 550. He is guilty of contributory negligence if by reason of his failure to exercise such care he

fails to discover and avoid a defect or obstruction which is visible and obvious. *Pinnix v. Durham,* 130 N. C., 360, 41 S. E., 932; *Ferguson v. Asheville, supra.*

The depression could be seen when he was 50 or more feet away. His machine could have been stopped within 6 feet. If he was keeping a proper lookout he disregarded the defect and drove into the basin shaped hole. If he was not keeping a proper lookout he was not exercising that degree of care the law required of him. *Ferguson v. Asheville, supra.*

He had a perfectly safe way to go, either to the right or to the left, but he chose, either purposely or by reason of his own inattention, the alleged dangerous way. *Groome v. Statesville,* 207 N. C., 538, 177 S. E., 638; *Dunnevant v. R. R.,* 167 N. C., 232, 83 S. E., 347.

The following cases, in principle, are likewise in point: *Watkins v. Raleigh,* 214 N. C., 644, 200 S. E., 424; *Speas v. Greensboro,* 204 N. C., 239, 167 S. E., 807; *Rollins v. Winston-Salem,* 176 N. C., 411, 97 S. E., 211; *Alexander v. Statesville,* 165 N. C., 527, 81 S. E., 736; *Stone v. Benson,* 214 N. C., 280, 195 S. E., 25; *Burns v. Charlotte,* 210 N. C., 48, 185 S. E., 443; *Finch v. Spring Hope,* 215 N. C., 246, 1 S. E. (2d), 634; *Lalor v. N. Y.,* 208 N. Y., 431, Ann. Cas., 1916-E, 431.

In the *Finch case, supra,* it appeared that the plaintiff was walking on an unimproved sidewalk in the nighttime and stumbled over the roots of a tree which extended 4 or 5 inches above the surface of the sidewalk. It was held that the motion to dismiss as of nonsuit should have been sustained.

In the *Lalor case, supra,* it was held that it did not constitute negligence to permit the existence in a street of a hole the size of a barrel head and four inches deep.

There is not a scintilla of evidence in the record that the deceased could not have seen or that he did not see the alleged defect in ample time to avoid it; and it was his duty to avoid a defect that was obvious and apparent. The record, therefore, discloses contributory negligence as a matter of law.

When it appears from all the evidence that the plaintiff ought not to recover it is the duty of the Court to say so. *Houston v. Monroe, supra,* and cases there cited.

I do not consider that the authorities cited in the majority opinion in support of the position that there is evidence of negligence are in point. In each a pedestrian was involved. Naturally a hole or defect which would not be at all dangerous for a vehicle might create a serious hazard for one walking on the sidewalk.

In *Sehorn v. Charlotte, supra,* the defect was a hole 16 to 18 inches in diameter about one-half way on the sidewalk and which was originally knee deep. At the time it was partly filled with untamped dirt and was

at least 4 to 7 inches deep. As a new trial was granted it is not made to appear whether the occurrence was during the day or night.

*Swinson v. Realty Co.,* 200 N. C., 276, 156 S. E., 545, was an action against a private corporation for damages resulting from the maintenance of a hydrant which projected 9 inches over the sidewalk, thereby creating a public nuisance. The plaintiff, a pedestrian, came in contact therewith. It was during the nighttime and no light was provided.

In *Gasque v. Asheville,* 207 N. C., 821, 178 S. E., 848, a pedestrian at night stepped on a defective water meter lid that gave way and precipitated the plaintiff into a deep hole. There was evidence that the lid was of an unsafe type and had been used for a long period of time and that the condition thereof could not be seen by the plaintiff. The charge of the court quoted in the opinion deals, generally, with the duty of a municipality in respect to the maintenance of its streets. It was not the subject of an exceptive assignment of error and was not, therefore, before the Court for review.

Likewise, the authorities cited in support of the position that the question of contributory negligence was for the jury, are not in point.

In *Cole v. Koonce,* 214 N. C., 188, 198 S. E., 637, there was evidence tending to show that the defendants' agent had parked a truck so that it extended over the paved portion of the road; that there was no light burning on the truck; that it was about 5 a.m., dark and foggy, and the lights on the plaintiff's car did not disclose the presence of the truck in time for him to avoid a collision.

*Ferguson v. Asheville, supra,* involves an obstruction in the street. The plaintiff was traveling on an automobile at night and there is evidence that the obstruction could not be seen. It is there said by the Court: "If, under these circumstances and the condition surrounding the ramp, the plaintiff, E. J. Ferguson, Jr., saw or by the exercise of reasonable care could have seen the ramp in time to have avoided the accident, and the accident followed as a result of his failure so to do, the plaintiff, E. J. Ferguson, Jr., would be guilty of such negligence as would insulate any negligence of the defendant in permitting the ramp to remain on the street unguarded." *Hughes v. Luther,* 189 N. C., 841, 128 S. E., 145; *Weston v. R. R.,* 194 N. C., 210, 139 S. E., 237; *Davis v. Jeffreys,* 197 N. C., 712, 150 S. E., 488; *Speas v. Greensboro,* 204 N. C., 239, 167 S. E., 807.

But even if we concede that there was sufficient evidence to require the submission of the issues to a jury, it clearly appears to me that the defendant is entitled to a new trial for error in the charge on the issue of damages.

After explaining to the jury that it was not to give the equivalent of human life and should allow nothing for suffering or out of sympathy

the court explained the method to be followed in determining the income of the deceased during the period of his expectancy of life. It then charged the jury:

"This amount, this gross amount, must be reduced to its present cash value which would necessarily be less than the gross amount and which may be arrived at by dividing the gross sum by one dollar plus the legal rate of interest (6%), for the expectancy years of the deceased, *as present worth of a sum payable at some future period without interest is such an amount as being put at interest will amount to the sum at the period when it becomes due.*"

It will be noted that the court used the term "gross" rather than "net" three separate times. A careful examination of this feature of the charge as a whole convinces me that the meaning of the term "gross" as used by the court, is not so explained as to make the patent error harmless. My conclusion that it was harmful is fortified by the amount of the verdict when it is considered in the light of the evidence.

Furthermore, if the members of the jury were able to interpret and understand the last clause above quoted (which was a material part of the charge), they possess an acuteness of mind to which I make no claim. To me it is unintelligible and meaningless; and serves only to confuse.

For the reasons stated I am unable to agree with the majority.

STACY, C. J., and WINBORNE, J., concur in this opinion.