FITZGERALD v. CONCORD.

(Filed November 28, 1905).

*Municipal Corporations—Defective Streets—Duty to Keep in Repair—Notice, Actual or Implied.*

1. In an action against a city for personal injuries, where the evidence tended to show that the plaintiff was injured by falling through a culvert while walking along the streets of the city on a dark night and no lights on the street, that the culvert was considerably worn and covered with dirt, that the top planks were worn, sagged and broken and could be seen through and had been in this condition for several weeks before the plaintiff was hurt, and that she had not noticed this place before, *held,* that there was error in directing a nonsuit.

2. The governing authorities of a town are charged with the duty of keeping their streets and sidewalks, drains, culverts, etc., in a reasonably safe condition; and their duty does not end at all with putting them in a safe and sound condition originally, but they are required to keep them so to the extent that this can be accomplished by proper and reasonable care and continuing supervision.

3. The town does not warrant that the condition of its streets, etc., shall be at all times absolutely safe. It is only responsible for negligent breach of duty, and, to establish such responsibility, it is not sufficient to show that a defect existed and an injury has been caused thereby. It must be further shown that the officers of the town "knew or by ordinary diligence might have discovered the defect, and the character of the defect was such that injuries to travelers therefrom might reasonably be anticipated."

4. The use of ordinary diligence is required to detect defects from natural decay in wooden structures by making examinations, with reasonable frequency, to ascertain whether they are safe or not and knowledge of a defect may be inferred, notwithstanding it may have escaped the attention of all travelers, or even of an officer frequently passing by.

5. On the question of notice· implied from the continued existence of a defect, no definite or fixed rule can be laid down as to the time required and it is usually a question for the jury on the facts and circumstances of each particular case, giving proper consideration to the character of the structure, its material, the time it had been in existence and use, the nature of the defect, its placing, etc.

ACTION by Rachel Fitzgerald against City of Concord, heard by *Judge M. H. Justice* and a jury, at the May Term, 1905, of the Superior Court of CABARRUS.

There was evidence of the plaintiff tending to show that she was injured while walking along the streets of Concord, by reason of falling through a defective culvert. The plaintiff herself, on the principal question, testified as follows: "I live on South Crowell street. On July 28, 1905, as I was going on my direct way home, down West Depot street and crossing the same, I entered South Crowell street on the bridge or culvert at the entrance of said street and fell into a hole in the culvert. The plank seemed to be partly broken. As I went down the planks held me fast and I could not get out. I fell with all my weight on my left foot, very badly spraining it, and injuring my hip. I pushed down the plank with my hand and crawled out, and crawled over to a store house at the intersection of the streets. By holding to the house and getting the support of a stick, I was able to get to a near neighbor's house and remained there during the night. The night was a very dark one and there were no lights on the street, as the storm had put them out. I had not noticed this place before in the street."

J. D. Gordon, a witness for the plaintiff, on his examination in chief, testified: "I do business at the intersection of West Depot and South Crowell streets. I knew the culvert in question; it was .16 or 18 .inches in diameter. It was as long as the width of Crowell street and was over the ditch on the south side of West Depot street. It was about 20 feet long and was crossed by all who enter South Crowell street

from West Depot street. It was used by those who enter the street walking and in vehicles. The culvert was considerably worn and covered with dirt. The top planks were worn, sagged and broken, and could be seen through, and had been in this condition for several weeks before the plaintiff says she was hurt. South Crowell street is one of the principal streets in Concord. I saw the plaintiff afterwards and she was limping and is still limping."

On the close of the testimony for the plaintiff, on motion of defendant, there was judgment of nonsuit, and the plaintiff excepted and appealed.

*W. G. Means* and *M. B. Stickley* for plaintiff.
*Montgomery & Crowell* and *L. T. Hartsell* for defendant.

HOKE, J., after stating the case: There was error in directing a nonsuit in this case and the plaintiff is entitled to have her cause submitted to a jury. The governing authorities of a town are charged with the duty of keeping their streets and sidewalks, drains, culverts, etc., in a reasonably safe condition; and their duty does not end at all with putting them in a safe and sound condition originally, but they are required to keep them so to the extent that this can be accomplished by proper and reasonable care and continuing supervision. Code, sec. 3803; *Bunch v. Edenton,* 90 N. C., 431; *Russell v. Monroe,* 116 N. C., 720.

In *Bunch's case, Merrimon, J.,* for the court, says: "It was the positive duty of the corporate authorities of the town of Edenton to keep the streets, including the sidewalks, in 'proper repair,' that is, in such condition as that the people passing and repassing over them might at all times do so with reasonable ease, speed and safety. And proper repair implies also that all bridges, dangerous pits, embankments, dangerous walls, and the like perilous things very near and adjoining the streets, shall be guarded against by proper rail-

ings and barriers. Positive nuisances on or near the streets should be forbidden under proper penalties, and, when they exist, should be abated."

The town, however, is not held to warrant that the condition of its streets, etc., shall be at all times absolutely safe. It is only responsible for negligent breach of duty, and, to establish such responsibility, it is not sufficient to show that a defect existed and an injury has been caused thereby. It must be further shown that the officers of the town "knew, or by ordinary diligence might have discovered, the defect, and the character of the defect was such that injuries to travelers therefrom might reasonably be anticipated."

It will be observed that actual notice of a dangerous condition or defective structure is not required, but notice may be implied from circumstances, and will be imputed to the town if its officers could have discovered the defect by the exercise of proper diligence. As pertinent to the present inquiry, it is stated in 1 Shearman & Red. Neg., sec. 369: "Unless some statute requires it, actual notice is not a necessary condition of corporate liability for the defect which caused the injury. Under its duty of active vigilance, a municipal corporation is bound to know the condition of its highways, and, for practical purposes, the opportunity of knowing must stand for actual knowledge. Hence, when observable defects in a highway have existed for a time so long that they ought to have been observed, notice of them is implied, and is imputed to those whose duty it is to repair them; in other words, they are presumed to have notice of such defects as they might have discovered by the exercise of reasonable diligence." And again, in the same section: "It is only reasonable that notice of latent defects should not be so readily presumed from their continuance as open and obvious defects. If these were so dangerous as to challenge immediate attention, the jury is justified in finding a very short continuance of such condition to constitute sufficient notice. Active vigilance is

140——8

required to detect defects from natural decay in wooden structures, like bridges, plank sidewalks and the like, which will necessarily become unsafe from age, but the most that ought to be required is the use of ordinary diligence by making tests and examinations, with reasonable frequency, to ascertain whether they are safe or not. It has been held that notice will not be implied unless the defect was so open and noticeable as to attract the attention of passers-by. But travelers are not charged with any duty to search for defects in a highway as road officers are, and the better rule, in our judgment, is that knowledge of a defect may be inferred, notwithstanding it may have escaped the attention of all travelers, or even of an officer frequently passing by. It is not a question whether all passers-by actually notice a defect, but whether it was noticeable." And the decided cases support the doctrine as stated. *Jones v. Greensboro,* 124 N. C., 310, 313; *Kibele v. Philadelphia,* 105 Pa., 41; *Kunz v. Troy,* 104 N. Y., 346; *Pomfrey v. Saratoga, ibid.,* 459.

On the question of notice implied from the continued existence of a defect, no definite or fixed rule can be laid down as to the time required and it is usually a question for the jury on the facts and circumstances of each particular case, giving proper consideration to the character of the structure, its material, the time it has been in existence and use, the nature of the defect, its placing, etc.

We have adverted only to the evidence most favorable to the plaintiff's demand, as this is required where a nonsuit is directed on the defendant's motion.

Applying the above principles to the testimony so considered, we are of opinion, as stated, that the plaintiff is entitled to have the question of the defendant's responsibility submitted to the jury under proper instructions from the court, and to that end a new trial is awarded.

New Trial.