### J. H. FOSTER, Administrator. v. TOWN OF TRYON.

(Filed 12 May, 1915.)

**1. Cities and Towns—Streets—Negligence—Defects—Notice.**

> The liability of an incorporated town for injuries caused by the faulty condition of its streets depends upon whether the town through its proper officers had actual or constructive notice of the defect causing the injury or could have avoided it in the exercise of reasonable diligence.

**2. Same—Trials—Questions for Jury.**

> The doctrine of constructive notice of a defect in the street of an incorporated town which will render it liable for an injury thereby proximately caused, rests upon its duty to inspect and repair its streets, and whether in the reasonable exercise of this duty the defect should have been dis-

covered and repaired in time by the proper officers of the town, ordinarily presents a question for the determination of the jury, depending upon the circumstances of each particular case.

## 3. Same—Evidence—Nonsuit.

The plaintiff's intestate was killed on one of the principal streets of the defendant incorporated town by a fall of the horse upon which he was riding, caused by the foot of the animal entering a hole in the top of a culvert extending across the street. There was evidence from an examination of the culvert that it had been faultily constructed in the respect complained of, that the defect was readily discernible, and located where several of the aldermen were accustomed to pass; that it had existed for several days, and on the day in question and an hour or two before the injury it had been called to the attention of the officer of the defendant whose duty it was to repair it, and when he was within 300 yards of the place. *Held*, evidence of defendant's actionable negligence sufficient to take the case to the jury, and defendant's motion to nonsuit thereon was properly denied.

APPEAL by defendant from *Webb, J.,* at September Term, 1914, of POLK.

This is an action to recover damages for wrongful death, the plaintiff alleging that his intestate was killed by the negligence of the defendant.

The intestate, a boy about 12 years of age, was riding on horseback on one of the principal streets of the defendant town, when his horse stepped in a hole about 6 or 8 inches wide, 10 or 12 inches long, and 18 inches deep, and stumbled and caused the death of the intestate by throwing him or falling on him.

There was a verdict and judgment for the plaintiff, and the defendant appealed, assigning as error the refusal of his Honor to enter judgment of nonsuit upon the conclusion of the whole evidence.

*Spainhour & Mull for plaintiff.*
*Solomon Gallert, Smith, Shipman & Bridgers for defendant.*

ALLEN, J. The duty which municipal corporations owe to those using their streets, and the degree of responsibility imposed upon them by law, are stated clearly and accurately by *Associate Justice Hoke* in *Fitzgerald v. Concord,* 140 N. C., 110, which has been approved in *Brown v. Durham,* 141 N. C., 252; *Revis v. Raleigh,* 150 N. C., 353; *Johnson v. Raleigh,* 156 N. C., 271; *Bailey v. Winston,* 157 N. C., 259, and in other cases. He says: "The governing authorities of a town are charged with the duty of keeping their streets and sidewalks, drains, culverts, etc., in a reasonably safe condition; and their duty does not end at all with putting them in a safe and sound condition originally, but they are required to keep them so to the extent that this can be accomplished by proper and reasonable care and continuing supervision. . . . The town, however, is not held to warrant that the condition of its streets, etc., shall be at all times absolutely safe. It is only responsible for negligent breach

of duty, and to establish such responsibility it is not sufficient to show that a defect exists and an injury has been caused thereby. It must be further shown that the officers of the town 'knew or by ordinary diligence might have discovered the' defect, and the character of the defect was such that injuries to travelers therefrom might reasonably be anticipated.' "

Notice of the defect in or dangerous condition of the street may be actual or ·constructive, and knowledge will be imputed to the corporation if its officers could by the exercise of ordinary care discover the defect and remedy it.

The doctrine of constructive notice rests upon the duty to inspect and repair, or, as stated by *Justice Walker* in *Bailey v. Winston, supra,* "The duty to exercise a reasonable and continuing supervision over its streets in order that it may know they are kept in safe and sound condition for use."

Speaking of the necessity for notice and of the circumstances under which it will be implied, Mr. Elliott says, in his Treatise on Roads and Streets, sec. 806 *et seq.:* "Whether a defect in a street is caused by the act of a third person or by the failure of the city to repair, there is, in general, no liability on the part of the city unless it has, or ought to have had, due notice of the defect. It is not necessary, however, that it should have actual notice; constructive notice is sufficient. Whenever the defect has existed for such a length of time and under such circumstances that the city or its officers, in the exercise of proper care and diligence, ought to have obtained knowledge of the defect, notice thereof will be presumed. Having means of knowledge and negligently remaining ignorant is equivalent to knowledge. It is generally for the jury to determine as a question of fact whether a city has notice or not. . . . The length of time during which a defect or an obstruction is required to exist in order to charge a city with notice must, however, depend largely on the nature of the defect and the circumstances of the particular case. . . . Where the defect is caused by the municipality itself, or where it makes the improvement, it is bound to take notice of such defects as ordinary skill and prudence will reveal. . . . Where actual notice is relied upon to charge the city with negligence respecting streets, it is sufficient if brought home to a proper officer charged with their maintenance and supervision. Thus, notice to a street commissioner or a road overseer is notice to the corporation."

The authorities in our State also support the proposition stated by Mr. Elliott, that the question of constructive notice is generally a question for the jury, and this is true because the conditions are so varying under which the principle will be applied that it is impossible in most cases to declare as matter of law that there is or is not constructive notice.

The locality in which the defect exists, whether in a remote section or in a much used and frequented street, the conspicuousness of the defect, so that it may be readily discovered, and other circumstances, have to be considered.

In *Brewster v. Elizabeth City,* 142 N. C., 11, *Justice Brown,* discussing the question of constructive notice and the knowledge of defects which may be inferred from the length of time they have continued, says: "It is not for the court to draw such inference. It is peculiarly a matter for the jury, to be determined upon all the facts and circumstances in evidence."

If these principles are applied to the evidence, the conclusion must follow that the motion for judgment of nonsuit was properly denied.

The hole into which the horse stepped was in a culvert or wooden box running across the street for the purpose of carrying water from one side to the other, and which was a little under the surface of the street.

The evidence offered by the plaintiff tends to prove that the intestate of the plaintiff was killed by reason of the horse stepping in this hole, and there is evidence that this culvert was originally constructed in a faulty and negligent manner, in that at this place the planks on the top of the culvert near the surface failed to meet by 6 or 8 inches, and that a stone not large enough to completely cover it was placed over this opening between the ends of the planks and the hole covered with dirt. This was on one of the principal streets of the defendant, where there was much travel, and it could be reasonably anticipated that the travel would. cause the dirt to fall into the empty box beneath and leave the hole near the center of the street. There was also evidence tending to prove that the hole was seen by one witness two or three days before the intestate was killed, by another witness on the day before, and that the officer of the defendant whose duty it was to repair the streets was notified of the existence of the hole an hour or two before the death of the intestate, and that he at the time of this notice was within 300 yards of the hole.

It is also in evidence that the hole could be easily seen, that it was in a conspicuous place, and that the commissioner of streets of the defendant passed by the place where the intestate was killed from four to six times a day.

The jury could reasonably infer from this evidence that the hole was near the center of one of the most important streets of the defendant, that it could be easily seen, that it could be repaired in a very short time, and that by the exercise of ordinary care in the performance of the duty imposed upon the defendant to inspect and repair its streets the death of the intestate could have been averted.

No error.