Civil action to recover damages for the death of the plaintiff's intestate. The issues of negligence, contributory negligence, and damages were answered in favor of the plaintiff. Judgment on the verdict. Appeal by defendant on exceptions appearing of record. The material facts are stated in the opinion.
In 1907 the General Assembly amended the charter of the city of Rocky Mount, investing it with all the property, rights, franchises, and powers of the town of Rocky Mount, and conferring all other powers, rights, and privileges requisite or pertaining to municipal corporations. Private Laws 1907, ch. 209. There is a public highway which extends from Wilson to a place in the city of Rocky Mount, where the Cokey road crosses the Norfolk and Carolina Railroad; and in 1913 the boundaries of the city were extended so as to include, with other territory, *Page 551 
that part of the Wilson road lying between the railroad and a prong of Tyancokey Swamp. Private Laws 1913, ch. 208. It is admitted that this is one of the principal public roads leading into Rocky Mount, and that the part of it between the railroad and the bridge where the intestate's death occurred is within the corporate limits of the city, the corporate line extending to the middle of the stream.
Owing to a heavy rainfall, the bridge, which was a concrete structure, gave way and fell into the water on Monday morning, 29 September, 1924, leaving above the water an open space of thirty feet. Two days afterwards, about 8 o'clock in the evening, while it was misty and dark, J. R. Houck and the deceased started from Rocky Mount to Wilson in a Ford coupe. The deceased was at the wheel. Apprehending no danger, he drove upon the bridge and into the open space; the car went into the water, upside down, and "filled up like a bucket." Houck escaped; the deceased was drowned. The city had erected no barrier, had displayed no light, had given no warning of the defect in the bridge. The plaintiff alleged, and by its verdict the jury said that the intestate's death was caused by the city's negligence. The specific allegations of negligence relate to the defective bridge and the failure to repair it, or to inspect it, or to warn the public of the danger.
The duty imposed upon a municipal corporation with respect to thoroughfares within its corporate limits has been prescribed by a number of our decisions, and the principles upon which it rests have been plainly stated. The governing authorities are charged with the duty of exercising due care to keep the streets, sidewalks, drains, and bridges in a reasonably safe condition, and this includes the exercise of due care as to inspection and continuing supervision. If in a street there is a pit, ditch, excavation, or other defect which menaces danger to the public, the authorities must exercise ordinary care in guarding the place by means of barriers, or lights, or such other instrumentality as may be reasonably sufficient for this purpose. They are not insurers, of course; they do not warrant the safe condition of the streets; but they are held to the responsibility of exercising proper care to keep and maintain them in a reasonably safe condition. A breach of duty occurs if with actual or constructive knowledge of the peril they fail to exercise the degree of care imposed upon them by the law. Fitzgerald v. Concord, 140 N.C. 110;Bailey v. Winston, 157 N.C. 253; Smith v. Winston, 162 N.C. 50; Fosterv. Tryon, 169 N.C. 182; Sehorn v. Charlotte, 171 N.C. 540; Dowell v.Raleigh, 173 N.C. 197; Bailey v. Asheville, 180 N.C. 645; Tinsley v.Winston, 192 N.C. 597. See Annotation to Elam v. Mt. Sterling, 20 L.R.A. (N.S.), 518.
The defendant, we understand, without impeaching the soundness of these principles, takes the position that they are not applicable to the *Page 552 
present case for the reasons now to be given. In 1907 the Legislature established the Rocky Mount Road District in the counties of Nash and Edgecombe. Public Laws 1907, ch. 814. The district embraces several hundred square miles. The road commission was given supervision and control of the convict force and supervision of all public roads in the district. The road tax was set aside as a special fund to be used in the construction, improvement, and maintenance of the public roads in the district and bridges that were not to cost more than fifty dollars. In section 18 it is provided: "No money shall be expended by the said road commission on any street of any incorporated town or city within said road district:Provided, however, that this section shall not apply to that portion of any main road or thoroughfare directly leading from or into Rocky Mount one-half mile and more from the center of said town or city of Rocky Mount, and for the purpose of this act the middle of the main track of the Atlantic Coast Line Railroad directly in front of the middle of the passenger station is declared to be the center of Rocky Mount."
There is evidence tending to show that upon the passage of this act the road commission took control of the part of the Wilson road which lies between the run of Tyancokey Swamp and the Cokey road, and exercised control over it continuously thereafter until the day of the alleged injury and death; and that when the concrete bridge was built, the road crossing the swamp was changed and reopened about twenty feet west of the place occupied by the old road, the part recently constructed extending about one hundred and seventy-five yards. The defendant contends that the road commission had exclusive control of the road; that there was no causal connection between the city's failure to keep the road in repair and the death of the intestate; and that liability attaches only when the duty to repair and to safeguard the public resides in a single governmental agency. These contentions present the specific question whether the act creating the road commission relieves the city, having actual or constructive notice of the danger, of the obligation to give notice of the peril.
We should be reluctant to accede to the proposition that the duty of inspection and maintenance devolved exclusively upon the road commission. Perhaps it was thus imposed before the corporate limits of the city were extended, but after the parts of the road in question was taken into the city limits, was there no change in the situation? "A public highway inrure, upon its inclusion by incorporation or annexation, within the municipal boundaries, becomes ipso facto a street, and subject to municipal control." 28 Cyc., 837. In Moore v. Meroney, 154 N.C. 158, it is said: "When a public highway enters an incorporated town, or such town builds up on one already existent, it usually follows that the highway, or *Page 553 
so much of it as is within the corporate limits, comes under the regulation and control of the corporate authorities as a part of the public streets. Elliott on Streets and Roads, secs. 415 and 416. In the absence of constitutional restraint, these authorities may have power to vacate or discontinue a street or public way, but when such street has been once established they can only do so by legislative sanction expressly given or necessarily implied from powers which are so conferred, and then compensation must be made to abutting owners whose property is injured.Moose v. Carson, 104 N.C. 431; Chair Co. v. Henderson, 121 Ga. 399." And in Gunter v. Sanford, 186 N.C. 452: "When a new governmental instrumentality is established, such as a municipal corporation, it takes control of the territory and affairs over which it is given authority to the exclusion of other local governmental instrumentalities. The fact that a highway extends through the corporate limits of a town or city does not deprive the municipality of its exclusive control over the streets or relieve it of the duty of improving and keeping them in repair. `The object of incorporating a town or city is to invest the inhabitants of the locality with the government of all matters that are of special municipal concern, and certainly the streets are as much of special and local concern as anything connected with a town or city can well be. It ought, therefore, to be presumed that they pass under the exclusive control of the municipality as soon as it comes into existence under the law.' 1 Elliott on Roads and Streets, sec. 505; 2 Cooley on Taxation, 1251." See, also,Gastonia v. Cloninger, 187 N.C. 765.
It is true that the municipality takes the land and corporate responsibility therefor in the condition in which it existed at the date of inclusion (28 Cyc., supra), but there is reason to doubt whether the general rule we have given is affected by the act establishing the road commission. The case of Waynesville v. Satterthwait, 136 N.C. 226, seems to be authority against the defendant's position. There the board of aldermen of Waynesville were empowered by special act to lay off, widen and straighten new streets in the town when in their opinion the public interest required the exercise of such power. By the provisions of another act the commissioners of Haywood County were authorized, when the proposition was approved, to issue and sell bonds of Waynesville Township for the purpose of macadamizing, grading and improving the public roads, etc. The road commissioners were given absolute control and management of the public roads of the township and were empowered to expend the funds arising from the sale of bonds for the purpose indicated. This act provided that it should be the duty of the road commissioners to begin improvements at the courthouse on the four main roads in said township. Referring to the apparent conflict of authority between the road commissioners and the governing authorities *Page 554 
of the town, the Court, after remarking that it was not necessary to express an opinion upon the right of the Legislature to confer upon a board of commissioners or other agency composed of persons not required to be residents of the town, the power to enter its corporate limits and relocate or open streets therein, said: "Any divided control or authority in regard to them must necessarily result in conflict and confusion. The courts will always endeavor to ascertain the intention of the Legislature by a careful examination of the statute and its several parts, taking into consideration the purpose and scope of the legislation, the present status of the subject-matter, and the rights and interest affected. They will also endeavor to so construe the act that no conflict with existing statutes occur further than is expressly or by necessary implication made necessary. The courts will never bring into question the power of the Legislature until they find no other reasonable way of deciding the question presented.Mardre v. Felton, 61 N.C. 279. The question presented by this record to be first considered is whether the Legislature has by the Act of 1903 conferred upon the defendant commissioners the `absolute control' of any of the streets in the town of Waynesville. If such is the effect of the statute, it must, in respect to such streets, repeal by implication section 16 of the charter. Certainly the board of aldermen and the defendant commissioners cannot at the same time have and exercise `absolute control' of the same street." The conclusion was that the words "shall begin improvements at the courthouse on the four main roads in said township," could be given effect by requiring the road commissioners to begin their work at the boundary of the corporation leading to the courthouse, thus leaving the city of Waynesville in the exclusive control of its streets.
We do not deem it necessary, however, definitely to decide this question or to say whether the repugnant section of the act establishing the road district was abrogated by the repealing clause of the act amending the charter of the city. If it be granted that after the road was taken into the corporate limits the road commission still had power to keep it up, this would not in itself absolve the city from liability for its negligence. Dual liability, joint or primary and secondary, has frequently been approved and enforced. Brown v. Louisburg, 126 N.C. 701; Kinsey v.Kinston, 145 N.C. 106; Seagraves v. Winston, 170 N.C. 618; Hardy v.Construction Co., 174 N.C. 320. The city recognized the road as a public thoroughfare, laid mains in it, put signs on it, and evidently held it out to the public as one of its streets. This was at least evidence of acceptance. 18 C. J., 84 (82). That the old road was changed at the swamp when the concrete bridge was built is immaterial. The authorities of the city had not only constructive, but actual notice of the fallen bridge in ample time to give due warning to people *Page 555 
having occasion to cross the stream. The superintendent of the street department "saw a man go into the hole in the day time, and did not do anything to barricade it." Even if the roads were to be maintained by taxes levied in the district and disbursed by the road commission the public safety nevertheless demanded that the governing authorities of the city should exercise due care to give timely warning of the great danger to which travelers were exposed. Willis v. New Bern, 191 N.C. 507. In this, as shown by the verdict, the city failed and should not now be permitted to escape liability for its negligence. What we have said disposes of all the exceptions, including those to the refusal to grant judgment of nonsuit and to the instructions given the jury. We have given to the cases cited from other jurisdictions the consideration which the importance of the appeal demands, but we have discovered no convincing reason for departing from the principles announced and adhered to in our own decisions. We find
No error.