### ELLA HOUSTON v. THE CITY OF MONROE.

(Filed 15 June, 1938.)

**1. Municipal Corporations § 14—Evidence held insufficient to establish liability on part of city for pedestrian's fall on walkway across street.**

The evidence tended to show that plaintiff was seriously injured when she fell on the walkway across a street at a bowl-shaped dip or depression 11 inches wide and 13 inches long and from 1¼ to 2½ inches deep at its lowest point, that the street lights were burning, that plaintiff was familiar with the crossing, having passed that way a short time before, and that she could have seen the situation had she been looking, but that she was not looking where she was going. *Held:* The evidence fails to establish liability on the part of the city, and its motion to nonsuit should have been allowed.

**2. Same—**

A municipality is not an insurer of the safety of its streets and sidewalks.

**3. Negligence §§ 19a, 19b—**

While a motion to nonsuit on the issue of negligence or contributory negligence often presents difficult questions, when it appears from all the evidence that plaintiff ought not to recover, it is the duty of the court to take the case from the jury.

APPEAL by defendant from *Harding, J.,* at February Term, 1938, of UNION.

Civil action to recover damages for personal injuries sustained by plaintiff when she fell on one of the public streets in the city of Monroe, due to a depression or hole in the walkway crossing the street.

The record discloses that after dark on the evening of 22 January, 1937, the plaintiff and two companions, who lived in Monroe, walked several blocks to the home of a friend where a death had occurred, and on their return between 9:30 and 10:00 o'clock, while traversing the same way they had gone earlier in the evening, the plaintiff fell on the hard-surfaced walkway crossing Windsor Street, and was severely injured. She stepped in a hole or bowl-shaped depression 11 inches wide and 13 inches long and from $1\frac{1}{4}$ to $2\frac{1}{2}$ inches deep at its lowest point. There is a white line indicating the existence of the walkway across the street. The crosswalk was at least seven feet wide.

One of plaintiff's companions testified: "The place where Miss Ella stepped was the shape of a tin pan exactly. I would say it was two inches deep at the deepest point, and it shallowed out towards the edge just like a bowl."

The other companion testified: "I observed nothing unusual about the condition of the streets or the lights. I pass that place almost daily myself and have been doing so for years. I don't remember whether she fell in a hole or not. I just remember that it was an outline of unevenness."

The condition in the crosswalk was described by other witnesses as (1) "just a dished out place. It was cracked on the outside and a little at the bottom." (2) "It wasn't a hole, just a sunken in place, more of a dip, dropped down about an inch and a quarter as if a heavy truck had smashed it in, a concave depression, right by the side of the white line."

The street lights were burning, and there was a white-way light at the intersection.

Plaintiff testified: "The lights were poor and I was in the middle, and I think the shadow of their skirts would keep me from seeing the hole."

On cross-examination she said: "I have been passing this corner going up street all my life. I didn't notice anything unusual about the crossing when we crossed and were going up town. I suppose the same lights were burning when we came back. . . . Well, I don't know which way I was looking. I don't know if I was looking in the street where I was walking. Certainly I would have seen the hole if I had been

looking. . . . I guess I said that if I had been looking where I was going, I could have seen the hole, if you say I did. Yes, I said I was not looking, and I was not; and I didn't know anything until I stepped in the hole."

The usual issues of negligence, contributory negligence and damages were submitted to the jury and answered in favor of the plaintiff.

From judgment on the verdict defendant appeals and assigns as error the refusal to nonsuit.

*Vann & Milliken for plaintiff, appellee.*
*E. Osborne Ayscue for defendant, appellant.*

STACY, C. J. The description of the place in the crosswalk where plaintiff fell, according to her own witnesses, ranges all the way from "an outline of unevenness" to a dip or depression, tin pan or saucer-shaped, 11 or 13 inches in diameter, 2½ inches deep at the center, and it tapered out to nothing or "shallowed out towards the edge just like a bowl." Plaintiff was familiar with the intersection. She knew the condition of the crosswalk, and could have seen the situation had she been looking, but she was not looking where she was going. She and her companions had passed over the intersection only a short time before. The defendant alleges in its answer that "a reasonable and ordinary inspection of the street would not have revealed the existence of the depression."

In the circumstances thus disclosed by the record, we are constrained to hold that the demurrer to the evidence should have been sustained, if not upon the principal question of liability, then upon the ground of contributory negligence. *Burns v. Charlotte,* 210 N. C., 48, 185 S. E., 443. See *Smith v. Sink,* 211 N. C., 725, 192 S. E., 108. A city is not an insurer of the safety of its streets and crosswalks. *Ferguson v. Asheville, ante,* 569; *Oliver v. Raleigh,* 212 N. C., 465; *Fitzgerald v. Concord,* 140 N. C., 110, 52 S. E., 309.

The principle upon which the case rests is stated in 13 R. C. L., 398-399, as follows: "The existence of a hole or depression, or a material inequality or unevenness, or a gap in a sidewalk or crosswalk may constitute such negligence on the part of a municipality as will render it liable to pedestrians for injuries caused thereby. . . . But a municipality cannot be expected to maintain the surface of its sidewalks free from all inequalities and from every possible obstruction to mere convenient travel, and slight inequalities or depressions or differences in grade, or a slight deviation from the original level of a walk due to the action of frost in the winter or spring, and other immaterial obstructions, or trivial defects which are not naturally dangerous, will not make a municipality liable for injuries occasioned thereby. The fact that

the surface of a walk may have become uneven from use, or that bricks therein may have become loose or displaced by the action of the elements, so that persons are liable to stumble or be otherwise inconvenienced in passing, does not necessarily involve the municipality in liability, so long as the defect can be readily discovered and easily avoided by persons exercising due care, or provided the defect be of such a nature as not of itself to be dangerous to persons so using the walk. So it has been held that a municipality is not liable for injuries to a pedestrian resulting from slipping or stumbling over a niche left in a sidewalk around a growing tree, from which the tree has been removed, or over a piece of stone projecting slightly above the level of a crosswalk."

The cases of *Bell v. Raleigh,* 212 N. C., 518; *Absher v. Raleigh,* 211 N. C., 567, 190 S. E., 897; *Doyle v. Charlotte,* 210 N. C., 709, 188 S. E., 322; *Sehorn v. Charlotte,* 171 N. C., 540, 88 S. E., 782; *Foster v. Tryon,* 169 N. C., 182, 85 S. E., 211; *Alexander v. Statesville,* 165 N. C., 527, 81 S. E., 763; *Neal v. Marion,* 129 N. C., 345, 40 S. E., 116; *Russell v. Monroe,* 116 N. C., 720, 21 S. E., 550, cited and relied upon by plaintiff, are all distinguishable by reason of different fact situations. It would be supererogatory to point them out in detail. There is no debate as to the general principles applicable to the case. *Diamond v. Service Stores,* 211 N. C., 632, 191 S. E., 358. "A serious and troublesome question is continually arising as to how far a court will declare certain conduct of a defendant negligence and certain conduct of a plaintiff contributory negligence and take away the question of negligence and contributory negligence from the jury"—*Clarkson, J.,* in *Moseley v. R. R.,* 197 N. C., 628, 150 S. E., 184. Nevertheless, when it appears from all the evidence that the plaintiff ought not to recover, it is the duty of the court to say so. *Love v. Asheville,* 210 N. C., 476, 187 S. E., 562; *Powers v. Sternberg, ante,* 41; *Rollins v. Winston-Salem,* 176 N. C., 411, 97 S. E., 211; *Foy v. Winston,* 135 N. C., 439, 47 S. E., 466; *Pinnix v. Durham,* 130 N. C., 360, 41 S. E., 932.

We are cited to the case of *City of Richmond v. Rose,* 127 Va., 772, 82 S. E., 561, as upholding a recovery on a similar state of facts, but an examination of the cited case discloses a fact situation more nearly parallel to that appearing in *Absher v. Raleigh, supra.* Much that is said by the Virginia Court in the *Rose case, supra,* if not all that is said in the valuable opinion rendered therein, is in full accord with our own decisions.

Plaintiff has sustained serious and permanent injuries as a result of her fall, but our conclusion is that the record fails to establish liability therefor on the part of the defendant.

Reversed.