MRS. N. J. WATKINS v. THE CITY OF RALEIGH.

(Filed 4 January, 1939.)

1. **Municipal Corporations § 14—Nonsuit held proper in this action against city to recover for injuries sustained in fall on sidewalk.**

The evidence tended to show that plaintiff was injured when her foot caught in a hole in the finishing surface of the sidewalk, causing her to fall to her injury, that the accident occurred in the morning of a clear day, that there was sufficient space on either side of the hole for walking, and that although shadows were cast on the sidewalk by trees between the sidewalk and curb, she could have clearly seen the hole had she looked. *Held:* Defendant municipality's motion to nonsuit was properly granted, if not upon the question of negligence, then upon the ground of contributory negligence.

2. **Same—**

A municipality is not an insurer of the safety of its streets and sidewalks, and may not be held negligent for slight inequalities or depressions or other immaterial obstructions constituting mere inconvenience to travel.

3. **Same—**

A pedestrian is required to use due care for his own safety, the care required being commensurate with the danger or appearance thereof, and is guilty of contributory negligence in failing to see and avoid defects which are visible and obvious and discoverable in the exercise of due care.

CLARKSON, SCHENCK, and SEAWELL, JJ., dissent.

APPEAL by plaintiff from *Spears, J.,* at Second April Term, 1938, of WAKE.

Civil action to recover damages for injuries resulting from alleged actionable negligence.

Defendant denies material allegations of complaint, and pleads contributory negligence of plaintiff.

The evidence offered by plaintiff tends to show that: On the morning of 9 May, 1936, at about 10:30 o'clock, while walking in a westerly direction along the sidewalk on the north side of Hillsboro Street between Dawson and Harrington Streets in the city of Raleigh, North Carolina, she stepped in a hole in the concrete and fell and, in consequence, suffered personal injury. The hole is described as being approximately two and a half feet wide, three feet long and two inches or more deep, the edges of it being broken, jagged and sharp and the bottom consisting of slick, jagged and sharp rock. The hole was there in 1932, and has since been there continuously. Plaintiff had walked along the sidewalk in October, 1935; but, she testified, that at that time

she did not see the hole. There is a row of trees between the sidewalk and curbing of the street. At the time plaintiff fell the trees were in full foliage, casting shadows on the sidewalk.

Plaintiff testified, in part: "It was a perfectly fair day. . . . As I hit the ground I saw just a hole in front of me. . . . When I got up I looked to see what caused me to fall, and there was a hole in the cement sidewalk. I was walking west, my back toward the Capitol, just as carefully as I ever walked. I wasn't looking for nothing, as far as I thought everything was all right. I was walking in my usual careful gait. The sidewalk looked perfectly smooth all the way down as far as I could see, just like shadows across the oak trees, you could see the shadows across the sidewalk all along. . . . And when I did get up I looked back to see and I was in a great big hole. . . . The picture is a perfect representation at the very day I fell. . . . My foot stepped on something hard and slipped and my heel caught against something, one of those sharp rocks and it just throwed me right down. I never had any knowledge or intimation that there was any such place as that in the sidewalk prior to the time I was hurt. I never had heard of it."

On cross-examination plaintiff further testified: ". . . The hole was not all the way across the sidewalk. . . . I should say there is plenty of room for a person to pass on either side. I can't say where I was looking at the time, but I was walking in perfect confidence, never crossed my mind there was anything wrong. I did not look for a hole. I was just walking along. . . . There was nothing at all obstructing my view of the sidewalk, nothing in the world to keep me from seeing it. . . . The sidewalk was no darker than it is when the sun is shining and the leaves are along there, shady, . . . shadows all along from the leaves of the trees. . . . If I had been a distance from it and seen it I evidently would have thought it was shadows on the sidewalk. I didn't see it but after I got off from it I looked back and I couldn't tell no more than if it had been shadows. When I got down ready to cross Harrington Street I stopped and looked back and it looked just like a shadow then. I did not try to look at it anywhere nearer than Harrington Street except when I got up. . . . Q. How did the shadows look before you got there? A. I didn't notice them no more than just seeing the trees and the leaves on the trees and the sidewalk getting shady. . . . Q. If you looked as far as from here to that door could you have seen it? A. I certainly could. I could see it now. . . ."

N. J. Watkins, husband of plaintiff, testified: ". . . I have seen the place where she fell on the sidewalk. . . . The first time I saw it after she fell was the next morning. . . . The first time I saw it

was some time back in the winter prior to the time she fell. . . . There is nothing at all to keep you from seeing it in the daytime. . . . There is no obstruction anywhere and it is practically apparent in the middle of the sidewalk. There is a space on both sides of it between the hole and the edge of the sidewalk. . . ."

Mrs. M. C. Bryan, who lives at the Woman's Club on Hillsboro Street, near the point of the accident, testified: ". . . The appearance of the hole as you approach it is that there are shadows, of course, always on the sidewalk and it would appear to look like a shadow if you were not looking at it very closely because the sidewalk is covered with shadows all along there. . . . Q. If you are looking from a distance of ten feet away could you tell it was a hole or shadow? A. If you are looking at the sidewalk you could. If you were walking along not paying attention to the sidewalk you would probably step into it. . . . If you are attentive and looking where you are walking you could see it. Q. You can tell some distance away from it? A. You could if you looked down."

For purposes of illustration, plaintiff identified and introduced in evidence a picture as "a perfect representation of the hole into which I fell." There it plainly appears that the hole is merely a broken place in the finishing surface of the sidewalk. The outlines of the hole are plainly visible and its surface is darker than the surrounding surface.

Upon motion of defendant, judgment as of nonsuit was entered at the close of plaintiff's evidence. Plaintiff appeals therefrom to the Supreme Court, and assigns error.

*Douglass & Douglass and R. L. McMillan for plaintiff, appellant.*
*Clem B. Holding for defendant, appellee.*

WINBORNE, J. Taking the evidence shown on this record in the light most favorable to plaintiff, the judgment as of nonsuit was properly granted.

As in *Houston v. Monroe,* 213 N. C., 788, 197 S. E., 571, we hold that demurrer to the evidence was sustainable "if not upon the principal question of liability, then upon the ground of contributory negligence." *Burns v. Charlotte,* 210 N. C., 48, 185 S. E., 443. A city is not an insurer of the safety of its streets and sidewalks. *Fitzgerald v. Concord,* 140 N. C., 110, 52 S. E., 309; *Oliver v. Raleigh,* 212 N. C., 465, 193 S. E., 853; *Ferguson v. Asheville,* 213 N. C., 569, 197 S. E., 146.

The same principle upon which *Houston v. Monroe, supra,* rests is applicable here, and is stated in 13 R. C. L., 398-399, as follows: "The existence of a hole or depression, or a material inequality or unevenness, or a gap in a sidewalk or crosswalk may constitute such negligence on

the part of a municipality as will render it liable to pedestrians for injuries caused thereby. . . . But a municipality cannot be expected to maintain the surface of its sidewalks free from all inequalities and from every possible obstruction to mere convenient travel, and slight inequalities or depressions or differences in grade, or a slight deviation from the original level of a walk due to the action of frost in the winter or spring, and other immaterial obstructions, or trivial defects which are not naturally dangerous, will not make a municipality liable for injuries occasioned thereby. The fact that the surface of a walk may have become uneven from use, or that bricks therein may have become loose or displaced by the action of the elements, so that persons are liable to stumble or be otherwise inconvenienced in passing, does not necessarily involve the municipality in liability so long as the defect can be readily discovered and easily avoided by persons exercising due care, or provided the defect be of such a nature as not of itself to be dangerous to persons so using the walk. So it has been held that a municipality is not liable for injuries to a pedestrian resulting from slipping or stumbling over a niche left in a sidewalk around a growing tree, from which the tree has been removed, or over a piece of stone projecting slightly above the level of a crosswalk."

A person traveling on a street is required in the exercise of due care to use his faculties to discover and avoid dangerous defects and obstructions, the care required being commensurate with the danger or appearance thereof. *Russell v. Monroe,* 116 N. C., 721, 21 S. E., 550; *Rollins v. Winston-Salem,* 176 N. C., 411, 97 S. E., 211; *Ferguson v. Asheville, supra.* He is guilty of contributory negligence if by reason of his failure to exercise such care he fails to discover and avoid a defect which is visible and obvious. *Pinnix v. Durham,* 130 N. C., 360, 41 S. E., 932; *Ferguson v. Asheville, supra.*

In the instant case the accident happened in the broad daylight of a "perfectly fair day." At the time and place there was nothing to obscure plaintiff's view of the sidewalk. The sun, shining through the leaves of the trees, was casting shadows on the sidewalk. Plaintiff did not notice the shadows any more than seeing the trees, and the sidewalk getting shady. All the evidence shows that if she had looked she could have seen it. She doesn't know where she was looking at the time. There was sufficient space on each side of the hole for walking.

Under all the circumstances, however unfortunate and regrettable the occurrence, the city is not liable.

The judgment below is
Affirmed.

CLARKSON, SCHENCK, and SEAWELL, JJ., dissent.