CARL HUNT, ADMINISTRATOR OF THE ESTATE OF WILLIAM L. HUNT, v. CITY OF HIGH POINT, A MUNICIPAL CORPORATION.

(Filed 31 January, 1946.)

1. **Municipal Corporations § 14—City is required to provide handrails and sufficient light when appropriate in discharge of duty to maintain streets in reasonably safe condition.**

    Plaintiff instituted this action alleging that his intestate was killed as a result of the negligence of defendant municipality in failing to provide handrails or guards and sufficient light at a bridge which was a part of a city street. Defendant demurred on the ground that it was acting in its sovereign capacity and was immune from suit. *Held:* The demurrer should have been overruled, since the maintenance of guard rails and providing reasonably adequate light when appropriate is required of a city in discharge of its positive duty to maintain its streets in a reasonably safe condition for travel, G. S., 160-54. The doctrine of sovereign immunity obtains in this State only when the negligence alleged is solely or exclusively predicated on defect or negligence in the original construction.

2. **Same—**

    While a city may not be under legal necessity of lighting its streets at all, where a city does maintain street lights, it is negligent in failing to provide lighting which is reasonably required at a particular place because of a dangerous condition of the street.

APPEAL by plaintiff from *Sink, J.,* 3 August, 1945, of GUILFORD.

This is an action to recover damages for the personal injury and death of plaintiff's intestate through the alleged negligence of the defendant

municipality in failing to provide handrails or guards, or to sufficiently light a bridge, part of the city street, constituting a danger to life and limb of those traveling thereupon, or to provide other appropriate means of protection.

The bridge, it is alleged, was over a creek or ravine running through that part of the city, and plaintiff's intestate, attempting to cross it in the nighttime, fell off the bridge into the ravine upon the rocks, breaking his hip, remaining partly submerged in the water, unable to extricate himself, for several hours. He finally died as the result of the injury.

The defendant demurred to the complaint as not stating a cause of action for that it appears on the face of the declaration that in both respects complained of—that is, as to furnishing handrails upon the bridge and as to lighting it—the municipality was acting in a sovereign or governmental capacity, was immune from suit, and whatever injury plaintiff's intestate sustained was *damnum absque injuria*. The demurrer was sustained, and plaintiff appealed.

*Byron Haworth and Walser & Wright for plaintiff, appellant.*
*G. H. Jones for defendant, appellee.*

SEAWELL, J. In no other of its aspects is the doctrine of "governmental immunity" more widely challenged than in its application to dangerous conditions in the streets created by defects of construction. Speaking of the rule of liability now prevailing in the majority of the states, McQuillin on Municipal Corporations, Revised Vol. 7 (1945), sec. 2901, has this to say:

"Apart from statute, late decisions in a majority of the states affirm implied municipal liability to private action for injuries resulting from defective public ways. In other words, the right to recover against a city for actionable negligence for defects in its streets and sidewalks is based on the common law, and requires no statute to proclaim it."

And further:

"Generally concerning public ways, the judicial decisions have established and imposed these obligations upon the municipal authorities: (1) Streets must be constructed in a reasonably safe manner, and to this end ordinary care must be exercised; (2) they must at all times be kept in proper repair or in a reasonably safe condition in so far as may be by the exercise of ordinary diligence and continuous supervision; (3) reasonably safe condition or proper repair implies that bridges, dangerous embankments, walls, declivities and like places and things adjoining or near the way must be safeguarded against by adequate railings, barriers or appropriate signals."

It will be observed that this analytical statement of municipal duty is presented almost in *ipsissimis verbis,* and approved, in *Willis v. New Bern,* 191 N. C., 507 (loc. cit. 510-511), 132 S. E., 286, 288. It is to be noted that in *Willis v. New Bern, supra,* no statute is referred to or made the basis of decision, although many of the cited cases depend on the force of the statute long existing in this State.

It has been repeatedly held that G. S., 160-54, relating to streets and bridges, imposes on towns and cities the positive duty to maintain the streets in a reasonably safe condition for travel, and that negligent failure to do so will render the municipality liable to private action for proximate injury. *Bunch v. Edenton,* 90 N. C., 431; *Russell v. Monroe,* 116 N. C., 720, 726, 121 S. E., 550; *Neal v. Marion,* 129 N. C., 345, 40 S. E., 116; *Fitzgerald v. Concord,* 140 N. C., 110, 113, 52 S. E., 309; *Graham v. Charlotte,* 186 N. C., 649, 120 S. E., 466; *Michaux v. Rocky Mount,* 193 N. C., 550, 137 S. E., 663; *Speas v. Greensboro,* 204 N. C., 239, 167 S. E., 804; *Radford v. Asheville,* 219 N. C., 185, 13 S. E. (2d), 256; *Waters v. Belhaven,* 222 N. C., 20, 21 S. E. (2d), 840; *Millar v. Wilson,* 222 N. C., 340, 23 S. E. (2d), 42.

It might well be questioned whether in the face of such a statute, upon which the public have a right to rely, preservation or continuance of an original structure palpably dangerous to the public could be reconciled with the proper maintenance of the streets in a reasonably safe condition for travel. In most other jurisdictions, as we have seen, that question has been resolved against the municipality. It might also be questioned whether, after the enactment of such a statute, a municipality could claim immunity from liability for obviously dangerous defects of construction subsequently installed. On both questions the weight of authority is generally against immunity. But in our own jurisdiction the defense of governmental immunity, or the existence of judicial discretion, has been upheld where the conduct of the municipality is called in question with respect to original planning and construction alone. *Scales v. Winston-Salem,* 189 N. C., 469, 127 S. E., 543; *Martin v. Greensboro,* 193 N. C., 573, 137 S. E., 666; *Blackwelder v. Concord,* 205 N. C., 792, 172 S. E., 392; *Klingenberg v. Raleigh,* 212 N. C., 549, 194 S. E., 297.

If the plaintiff had predicated the charge of negligence solely or exclusively on defect or negligence in the original construction of the street, and not to the breach of an incidental duty of safeguarding the danger thus created, the defendant might have relied on these cases with assurance. But the allegations of the complaint, and this appeal, raise the question whether it was the duty of the municipality to provide such means as ordinary prudence might require to alleviate the danger or avert injury. On this question authority here and elsewhere is uniformly against appellee. *Willis v. New Bern, supra; Speas v. Greensboro,*

*supra; Comer v. Winston-Salem,* 178 N. C., 383, 100 S. E., 619; *Graham v. Charlotte, supra; Michaux v. Rocky Mount, supra; Hamilton v. Rocky Mount,* 199 N. C., 504, 154 S. E., 844.

It is the existence of the danger, not its origin, with which the unwarned traveller is concerned, and which engages the attention of the safety laws. A municipality cannot, with impunity, create in its streets a condition palpably dangerous, neglect to provide the most ordinary means of protection against it, and avoid liability for proximate injury on the plea of governmental immunity.

In *Speas v. Greensboro, supra, Justice Adams,* writing the opinion for the Court, said: "The exercise of due care to keep its streets in a reasonably safe and suitable condition is one of the positive obligations imposed upon a municipal corporation. Discharge of this obligation cannot be evaded on the theory that in the construction and maintenance of its streets the municipality acts in a governmental capacity."

In *Willis v. New Bern, supra* (loc. cit. pp. 510-511), it is said: "(1) They shall be constructed in a reasonably safe manner, and to this end ordinary care must be exercised at all times; (2) They shall be kept in proper repair or in a reasonably safe condition to the extent that this can be accomplished by proper and reasonable care and continuing supervision; (3) proper repair implies that all bridges, dangerous pits, embankments, dangerous walls and the like perilous places and things very near and adjoining the streets shall be guarded against by proper railings and barriers or other reasonably necessary signals for the protection of the public. *Russell v. Monroe,* 116 N. C., 720; *Neal v. Marion,* 126 N. C., 412; *Fitzgerald v. Concord,* 140 N. C., 110; *Brown v. Durham,* 141 N. C., 249; *Darden v. Plymouth,* 166 N. C., 492; *Foster v. Tryon,* 169 N. C., 182; *Duke v. Belhaven,* 174 N. C., 96; *Stultz v. Thomas,* 182 N. C., 470; *Goldstein v. R. R.,* 188 N. C., 636."

In *Fitzgerald v. Concord, supra,* at page 112, *Justice Hoke,* speaking for the Court, adopts the language of *Merrimon, J.,* in delivering the opinion of the Court in *Bunch v. Edenton, supra:* "And proper repair implies also that all bridges, dangerous pits, embankments, dangerous walls, and the like perilous things very near and adjoining the streets shall be guarded against by proper railings and barriers."

In 8 Am. Jur., p. 937, the erection of guard rails is referred to the duty of maintenance and repair: "The necessity of erecting guard rails upon bridges, or upon the approaches thereto is unquestionably a part of the duty of maintenance and repair, if such rails are in fact reasonably necessary for the safety of the public in using the bridge. Failure in this regard will render the political subdivision charged with the maintenance liable for injuries resulting therefrom."

Appellee argues that since a municipality is not under the legal necessity of lighting its streets at all, it is under no obligation to light them at points of danger, citing *Brady v. Randleman,* 159 N. C., 434, 74 S. E., 811; *White v. New Bern,* 146 N. C., 447, 59 S. E., 992. Well considered cases applying that doctrine are careful to note that its application is confined to situations where the statute imposing the more positive duty has been observed, and the streets are in reasonably safe condition for travel; in the case at bar, accepting the allegations of the complaint as true, they were not. Under the suggested view the law, upon which the traveling public have a right to rely, would be nullified by a doctrine extended far beyond its political necessities and become a trap. Careful examination of the cited cases show this principle to be recognized. The highly progressive and industrialized City of High Point had not exercised the privilege of a complete blackout and, therefore, had the facilities for adequately lighting this dangerous section of the street, if that is what ordinary prudence would suggest.

Courts are reluctant to dictate just what devices of warning or protection should be adopted in particular cases or as to particular dangerous conditions under control of a municipality, or other party, charged with negligence, but the absence of the appropriate devices, particularly those in common use for the purpose, is evidence of negligence; and so is absence of reasonably adequate lighting in a defective condition of the streets exposing the traveller to this sort of danger.

In applying the statute, G. S., 160-54, requiring towns and cities to keep their streets in a reasonably safe condition for travel, the decisions have made no distinction which would justify us in excluding from that care dangerous situations, of whatever origin, on the theory of governmental immunity. Negligent failure to take such measures as ordinary prudence requires to avert injury, where the municipality has actual or imputable knowledge of the dangerous condition, would render the municipality liable for injury proximately caused.

The plaintiff has the right to go to the jury in proof of the allegations of his complaint, and the judgment sustaining the demurrer is

Reversed.