66 S.E.2d 789 (1951)
234 N.C. 181
PRESLEY
v.
C. M. ALLEN & CO., Inc.
No. 24.
Supreme Court of North Carolina.
September 26, 1951.
*790 R. E. Sentelle, W. R. Francis, Waynesville, and Geo. M. Pritchard, Asheville, for plaintiff, appellant.
Harkins, Van Winkle, Walton & Buck, Asheville, for defendant, appellee.
JOHNSON, Justice.
The plaintiff offered evidence tending to show that on and prior to 14 July, 1948, the defendant contractor was and had been engaged in excavating a ditch for the purpose of laying underground cables for the telephone company along Main Street at and near the junction of Adams Street in the Town of Canton, where traffic was heavy. The excavation extended from near the intersection of Main and Adam Streets westerly inside and along the paved portion of Main Street down to a point in Water Street an overall distance of "two or three hundred feet." The project had been underway about two weeks. "They would excavate a distance," put in a section of the conduit, * * * "and close that up and go to another section." While the work was in progress the north side of Main Street between the excavation and the curb was left open to vehicular traffic. The ditch was about two feet wide and from three to five feet deep. It ran parallel to and about four feet inside from the south curb. The width of Main Street there is from 40 to 50 feet. Hence, there was left open for traffic on the north side of the ditch some 30 to 35 feet of the street. At the time of the mishap a section of the ditch from 50 to 100 feet long was open on Main Street immediately west of the Adams Street intersection.
The dirt and clay from the ditch had been thrown out on both sides, mainly on the north or traveled side, forming on that side an embankment from 18 to 24 inches high next to the ditch.
The evidence was conflicting as to the number and location of warning signs and barriers along and near the excavation. According to plaintiff's evidence (which controls the appeal), there were no guard rails between the ditch and the traveled portion of the street. The plaintiff testified, however, that "there was a horse (a type of barrier) at the upper end, * * * (with) a sign hanging on it that said `Men Working'. That was probably 100 feet up the street." He and his witnesses also said like "horses" were stationed at other places near and at each end of the ditch.
Clay was "scattered on the right (north) side of the street coming west." As one of plaintiff's witnesses put it, "It wasn't too deep over in the street, it just got knocked over there and there was enough to make the street disagreeable for traffic, * * * the clay was all wet and slippery that day. It had been raining all day" but had just slackened. There was evidence that the surface of the street sloped slightly toward the west and also in the direction of the ditch.
The plaintiff related the details of the occurrences in substance as follows: That on the afternoon in question, at about 3:30 o'clock, he drove his pick-up truck up to the intersection of Main and Adams Streets. A station wagon in front of him went on through, but he was caught by the traffic light turning red. Immediately in front of plaintiff and beyond the intersection, a long work bus was parked on his right at an angle. The rear of this bus projected back from the sidewalk so that when plaintiff stopped on the red light the bus was so parked that he "couldn't see around it." A policeman standing on the northeast corner of the intersection motioned plaintiff around the bus. When he got around the bus, he said "I could (then) see * * * (the) station wagon there. * * * It *791 was double-parked, and there was not room to get between (it) and the ditch, * * * and I saw I was going to hit the station wagon, so I applied my brakes and skidded into the ditch and the last thing I remember my chest hit the steering wheel." The distance between the parked station wagon and the ditch was "probably 4 or 5 feet, * * not room for me to go through." He said he "skidded a little forward and sidewise" into the ditch, "approximately 4 feet." Only the left front wheel went in the ditch. At that point his pick-up was about 10 feet behind the double-parked station wagon. The distance traveled by the plaintiff from the intersection to where he came to rest in the ditch varied according to plaintiff's evidence from 10 to 20 feet, and he said he was driving 7 or 8 miles an hour. He said the policeman "motioned me through pretty fast and I stepped on it and went on." There was no evidence tending to show signs of skid marks made by plaintiff's pick-up near where it went in the ditch.
The plaintiff insists that his evidence was sufficient to take the case to the jury. He places chief emphasis on the evidence which tends to support his allegations that the defendant was negligent in (1) failing to provide adequate signs, barriers, and guard rails for the protection of the traveling public; and (2) "throwing loose clay from the ditch onto the pavement, * * * and in permitting the wet clay to be scattered and strewn over the pavement where the public was traveling."
1. The alleged failure to provide adequate signs, barriers, and guard rails. On this record it may be assumed that in placing the telephone wires and cables underground the defendant contractor was performing a lawful undertaking for the telephone company and that the ditch was being excavated along Main Street with the sanction and permission of the governing board of the Town. G.S. § 160-222.
The question then arises as to what duty the defendant owed the public in respect to keeping safe the traveled portion of the street while the construction work was in progress.
It seems to be conceded, and rightly so, that the defendant, being in charge of the excavation project, was under substantially the same legal duty to the traveling public as would the Town if it had been in direct charge of making the excavation for some purpose of its own. Kinsey v. City of Kinston, 145 N.C. 106, 58 S.E. 912. See also McQuillin, Municipal Corporations, 3d. Ed., Vol. 19, Sec. 54.42, pp. 148 to 150.
The defendant was not an insurer of the safety of travelers upon the street. Watkins v. City of Raleigh, 214 N.C. 644, 200 S.E. 424; Houston v. City of Monroe, 213 N.C. 788, 197 S.E. 571. And that is so notwithstanding the fact that in making the excavation inside of the traveled portion of the street the defendant may have created a dangerous condition therein. Assuming, as we may, that the excavation was made under permission duly granted by the municipality, the defendant contractor was under the duty to exercise ordinary care, i. e., care commensurate with the surrounding dangers and circumstances, to warn travelers of the existence of the excavation, and otherwise to protect them against injury therefrom. Evans v. Shea Bros. Construction Co., 194 N.C. 31, 138 S.E. 411; Ramsbottom v. Atlantic Coast Line Railroad Co., 138 N.C. 38, 50 S.E. 448; 25 Am.Jur., Highways, Sec. 400, pp. 697 and 698. See also Murray v. Atlantic Coast Line R. Co., 218 N.C. 392, 11 S.E.2d 326; Anno.: 119 A.L.R. 841.
Also, where, as here, a work project or repair job is underway and a portion of the street is left open to traffic, the usual rule that a traveler may assume a public street to be in safe condition has no application. Beaver v. Town of China Grove, 222 N.C. 234, 22 S.E.2d 434. The public is not invited to use the open portion as in all respects entirely safe, as under ordinary conditions. The invitation has its limitations and includes warnings of danger based on physical facts apparent to the traveler. Phelan v. Granite Bituminous Paving Co., 227 Mo. 666, 127 S.W. 318; 25 Am.Jur., Highways, Sec. 400, p. *792 698. Therefore, a contractor lawfully in charge of an excavation project in a street, as in the instant case, fulfils his obligation to those who use the adjacent traveled portion of the street when in the exercise of ordinary care he takes reasonable precautions to notify the public that work of such character is in progress and to guard against injuries arising therefrom. Phelan v. Granite Bituminous Paving Co., supra; 25 Am.Jur., Highways, Sec. 400, p. 698.
Thus it would seem that ordinarily the law imposes no special requirement that barriers or guard rails of any particular kind be erected as the means of giving protection and warning against dangers incident to a temporary street excavation, on pain of liability for failure to do so. In the final analysis, the test of the sufficiency of the warning is not whether barriers or other physical devices are used, but is whether the means employed, whatever they may be, are reasonably sufficient to give warning of the danger. 25 Am. Jur., Highways, Sec. 413, p. 708. Ordinarily, it would seem to be sufficient if a plain warning of danger is given and the traveler has notice and knowledge of facts sufficient to enable him, in the exercise of ordinary care, to avert injury. 63 C.J.S., Municipal Corporations, § 821, page 158.
It follows, therefore, that when an excavation is plainly visible, the municipality (or responsible authority) is not bound to place a guard or signal there in the daytime. City of Rock Island v. Gingles, 217 Ill. 185, 75 N.E. 468; 63 C.J.S., Municipal Corporations, § 821, page 158. See also McQuillin, Municipal Corporations, 3d. Ed. Vol. 19, Sec. 54.90, top p. 343.
Also, when a contractor who is charged with the duty of giving protective warning in respect to a street excavation, or temporary hazard of like kind, proceeds to erect barriers in the vicinity of the project, ordinarily it may be assumed that the purpose of the barrier is to warn travelers of the danger, and not to furnish protective shields for repelling the force of vehicles that may deviate from the traveled portion of the street into the zone of danger. It is not required that such barriers be proof against any substantial degree of force. It suffices if they are reasonably calculated to give warning to those who themselves are exercising ordinary care for their own safety. Love v. City of Asheville, 210 N.C. 476, 187 S.E. 562; Haney v. Town of Lincolnton, 207 N.C. 282, 176 S.E. 573.
When we come to apply the foregoing rules of law to the plaintiff's evidence, it would seem that the testimony strongly negatives any implication of negligence on the part of the defendant in respect to failure to provide adequate warnings of danger for the traveling public.
In any event, it appears that the mishap occurred in broad daylight. The plaintiff had passed the place earlier that day. He had "seen men working there better than two weeks, off and on." He said, "I had passed that place sometimes once a day and sometimes twice a day." Thus the plaintiff had actual knowledge of the condition of the street and of the excavation project therein. "No one needs notice of what he already knows", and "knowledge of the danger is equivalent to prior notice". Beaver v. Town of China Grove, supra, 222 N.C. 234, at page 236, 22 S.E.2d 434, 436. Accordingly, on this record there appears to be a complete lack of causal connection between the injuries complained of and any negligence of the defendant that may be predicated upon plaintiff's allegations that defendant was negligent in failing to provide adequate signs, barricades, and guard rails for the protection of the traveling public, Beaver v. Town of China Grove, supra, and proximate cause is an essential element of actionable negligence. Love v. City of Asheville, supra, 210 N.C. 477, 187 S.E. 562. See also Wood v. Carolina Telephone & Tel. Co., 228 N.C. 605, 46 S.E.2d 717, 3 A.L.R.2d 1.
2. The question of actionable negligence predicated upon permitting wet clay to be scattered over the traveled portion of the pavement. If we should concede, without deciding, that the plaintiff *793 made out a prima facie case on this theory (Grab v. Davis Const. Co., 233 Mo.App. 819, 109 S.W.2d 882), nevertheless, it is manifest from the evidence adduced by the plaintiff that he failed to exercise due care for his own safety and that such failure to exercise care contributed to, and was a proximate cause of, his injuries. It is settled by many decisions of this Court that judgment of nonsuit may properly be entered when the plaintiff by his own evidence makes out a clear case of contributory negligence. He thus proves himself out of court. Sawyer v. Southern Rwy. Co., et al., 234 N.C. , 66 S.E.2d 639; Watkins v. City of Raleigh, supra, 214 N.C. 644, 200 S.E. 424: Houston v. City of Monroe, supra, 213 N.C. 788, 197 S.E. 571.
The plaintiff's evidence shows he knew the ditch was there and that the clay was piled alongside of it. He said, "I had seen men working there better than two weeks, off and on." And further that he "Had passed over the same place fifty times while they were digging that ditch. Every time I passed without any trouble." He said he knew the men were working there the day of the accident and "knew they were throwing dirt out of the ditch." He had driven past the place earlier that day. The evidence discloses that it had rained all day until just before the mishap. Thus if the clay was slick on the surface of the pavement, he knew, or in the exercise of due care should have known it. While he was caught by the red traffic light, just before crossing the intersection, the condition of the pavement was in full view, so that if, as testified by his witness Josephson, "there was a film of dirt on the street all over the intersection, and * * * piled alongside of the ditch," the plaintiff was chargeable with notice of such condition. The evidence shows unmistakably he was thoroughly familiar with all the conditions of the street at the time.
It is also clear from the record that the traveled portion of the street, parallel to and on the north side of the ditch, was amply wide for him, in the exercise of due care, to have remained out of slipping distance of the ditch. As he proceeded westerly on Main Street, the traveled portion of Main Street north of the ditch was from 30 to 40 feet wide. True, he had to swing left around the rear of a parked bus on the right side of the street immediately beyond the intersection, but even so, this left plenty of room for him to have driven around the bus and averted the danger of skidding into the ditch.
The only reasonable inferences deducible from the evidence are that he either (1) neglected to maintain a proper lookout and failed to exercise proper control over his pick-up in swinging wide behind the parked work bus and within slipping distance of the ditch, when he had ample space to the right of the ditch to have remained out of danger; or (2) steered his pick-up into the wet mud and clay mound in close proximity to the ditch, in an effort to pass to the left of the parked station wagon ahead of him, and learned too late there was not room to pass in the four or five-foot space between the ditch and the station wagon. In either of these events, he is chargeable as a matter of law with negligence proximately causing or contributing to his injury. Owens v. City of Charlotte, 159 N.C. 332, 74 S.E. 748; Sawyer v. Southern Railroad Co., supra, and cases cited; City of Alton v. English, 69 Ill.App. 197; Marshall v. City of Baton Rouge, La.App., 32 So.2d 469. See also McQuillin, Municipal Corporations, 3d. Ed., Vol. 19, Sec. 54.138, p. 504 et seq.
We conclude, therefore, that the motion to nonsuit was properly allowed.
Affirmed.
VALENTINE, J., took no part in the consideration or decision of this case.