This action was brought by the plaintiff to recover damages for an injury sustained by him through the alleged negligence of the defendant in failing to keep a certain sidewalk in the city in good repair and safe for the use of pedestrians.
Under appropriate pleadings, evidence was introduced for the plaintiff and the defendant, the parts of which pertinent to this appeal may be summarized:
The plaintiff was walking on the sidewalk on Broadway Street in Asheville on the way to his rooming house. The sidewalk in question was immediately adjacent to the rooming house. The lower part of this building was occupied as a furniture store. Near the upper corner *Page 186 
of the building, which the plaintiff was trying to reach, there was a coal chute near to and just above the door leading downstairs into the storeroom, which chute went under the floor of the building at an angle. The top of the chute was a metal leaf running out into the sidewalk about 18 inches from the wall and running up and down the sidewalk in an oblong shape. This door was designed to be opened up and turned back upon hinges, and when in a closed position formed a part of the sidewalk. The hinges were off, as well as the angle irons. The door was about 20 inches wide and 25 inches long and about a quarter of an inch thick. The hinges were all rusted off the butts. They were rusted down to the butts and wouldn't hold. There was a little lever on the bottom of it that worked back toward the street to keep the door from being raised from the outside. There had been angle irons under the covering. The angle irons were worn off clear down in the chute.
Plaintiff was uncertain whether he stepped on this door, but when he recovered consciousness he was lying on the sidewalk, with the door off to one side — the plaintiff on the left side down the street. Plaintiff's right leg was down in the coal chute, and his left elbow was fractured.
This occurred between nine and ten o'clock at night on the 12th of September. There were automobiles and trucks parked around the side, and the street light was around forty to eighty steps from the place. These lights did not shine in there and there were no other lights.
Plaintiff called to a Mr. Gilbert for help after he recovered consciousness. He did not know how long he had lain there, because in falling to the sidewalk he hit the left side of his head and was unconscious. The joint of the right elbow was fractured; plaintiff had it dressed three times and pus had come out of it. The left knee and left hip were bruised, the right leg skinned from the knee down, the right ankle sprained, and the shin on that side fractured. Later on a piece of bone was taken out from that leg in February and still later plaintiff got a piece of shivered bone out himself. Plaintiff testified that he suffered great pain and continued to suffer pain and inconvenience from the injury. Plaintiff further testified that he had been running a place of business in Asheville and making a good living out of it, but was not able to continue it and was compelled to sell it and had done no work since; not able to do any hard lifting or digging of any kind.
Plaintiff later had the coal chute measured. The print of his right foot was still there two weeks later and the coal chute in the same shape as when he got hurt, that is, the lid was.
Plaintiff then offered in evidence certain pieces of iron and wood gotten from the coal chute as explaining its condition. He exhibited one iron as lying where his foot hit the coal chute. *Page 187 
Further describing the condition of the chute covering, plaintiff testified that there had been angle irons around four sides of the coal chute, fastened with rivets, but they had all rusted off, indicating one of these irons was off the lid. The angle irons were insufficient to hold the lid, which would slide when you stepped on it — move up and down the street, or "slide ever which way you stepped and pushed it."
The street at this point had a decided downward inclination northward.
Enough of the retaining parts of the lid had rusted off to cause it to slide when stepped upon, and the lower end would "rear up." Plaintiff further testified that after he had been hurt and the lid replaced on the hole that he could lie in his rooming house and hear a clang as people passed over it.
J. P. Ducker, a witness for the plaintiff, testified that he knew the location of the coal chute, which was approximately eight or ten feet from the door of the place where he was working — the front door on the east side of Broadway and the west side of the building. The building was occupied by Mr. McClintock's woodworking place, refinishing, upholstering, etc. The second floor was apartments. The building had a brick front. The street was paved and was made of concrete, and the sidewalk was approximately five feet wide. At that point the street was down hill going northward.
Witness described the opening in the cover. He had seen it open as much as an inch and a half; had seen it slide down hill, and he had kicked on it a couple of times. That was before Mr. Radford fell. The cover looked like a thin piece of metal over it about a quarter of an inch in thickness and seemed to be warped or out of place.
Witness said that he had put the cover back on a couple of times before Mr. Radford fell. That he would not swear the exact date but did not believe it was so long before. He would put it something from a week to a year.
Witness testified that he called the attention of a city employee on a truck to the condition of this cover, saying: "Look at this thing; somebody is going to get hurt on it."
He testified that kids would go down there and jump up and down on it with both feet, back and forth, making a racket on the chute cover, and that you could hear it while people were walking on it. He had examined the supports at the time Mr. Radford was hurt. The rivets were supposed to keep it from slipping off, but they had rusted off, and you could take your hand and take it off, or you could jump up and down on it, and it would slide off. It was supposed to have a groove around it to keep it in place, but it was not sufficient. In going down hill, if you stepped on one end of it, it would raise the other, if you *Page 188 
stepped on it hard, it would slide. When sliding it would leave an opening on the upper side of a quarter of an inch to two and a half inches. The hole from the top to the bottom of the chute was about eight feet.
The lid was a piece of metal a little longer than wide, about a quarter of an inch thick, had cleats on it, but they had been broken off or rusted, the ends were still there. It was warped and the sidewalk is not level and when you step on it it slips. Witness had seen the top of the coal chute off two or three times and had been working there several months; had seen children jumping up and down on the coal chute at least 25 times; saw none of them fall in.
R. Lee Gilbert, witness for the plaintiff, testified that he roomed in the apartment building near the place of the accident, heard Mr. Radford calling for help, went down and saw that he was "down in the place in the sidewalk," the place where they put coal in the basement. Where the coal chute breaks the sidewalk to go under the building the depth underneath was about two feet. The lid had slid down the street, moved off its regular place, where it set down and slid down to the right and Mr. Radford was down in that place. It seemed to have slid about a foot.
Plaintiff told this witness that he did not know how long he had been there, that it "knocked him out when he fell."
Witness gave the plaintiff first aid treatment with iodine and mercurochrome. Witness went on a trip and when he came back three or four days later he was advised that plaintiff had not been able to work, so they had a doctor with him. He was laid up for a week or ten days and told witness he would not be able to work and would have to sell his stand and go back in the country and stay a while. His arm was bruised up and he couldn't straighten up. He could not stand up and there was pain around his back. Plaintiff had been in active work at the stand and helping with trucking.
Witness stated that he had heard noises frequently at this place — a rattle when anyone stepped on the cover.
It was developed from defendant's evidence (C. L. McClintock), that the hinges to the cover had rusted in two and this made the lid loose, that the lid "wobbled" when feet were placed on either end of it.
Bearing upon the inspection of the streets, Dan Furr, witness for the defendant, testified that he was street superintendent of the city of Asheville; that he had gone to the place of the accident and had tried to get the cover off the chute and was compelled to use a screwdriver in that effort. "It was hooked on one side, and it slid back the other way. We took the screwdriver and tried to get it up; it would rock, but we couldn't raise it up enough to get my fingers under it." This witness *Page 189 
further testified that he had gone to this place because a formal notice of the accident had been filed with the city. On cross-examination this witness said that the first he had ever heard of it was when they were notified; that he did not know the condition of the coal chute on 12 September, 1939, because he was not down there; that he had never examined it before this time; that he had been along the street there a number of times but had never had any complaint; had walked along Broadway a number of times but had had no complaint; that he had not been down there prior to this time. "I have not, but (addressing the Court) Judge, here is what I wanted to explain. We have over two hundred miles of streets in the City of Asheville, and it is impossible for anyone to go around and examine every place all the time, and he has asked me if I've ever been down there, and I have been on the street before, but I hadn't noticed this particular place, because it hadn't been called to my attention that there had been anything wrong with it." Witness stated that he had not approved of the manner in which the coal chute had been placed, that it had been approved by someone else a long time ago; that he knew nothing about the coal chute only as he had just described. "And the only time these matters come before you is when a complaint is made."
At the conclusion of the plaintiff's evidence and at the conclusion of all the evidence, the defendant moved for judgment as of nonsuit, which was denied.
Three issues were submitted to the jury relating to the negligence of the defendant, contributory negligence of the plaintiff, and the damages sustained, if any. The jury answered all issues in favor of the plaintiff and assessed the damages at $1,850.00. Motion to set aside the verdict for errors was denied and defendant also excepted and appealed to this Court, assigning errors.
Defendant's appeal rests upon its exceptions to the denial of its motions for nonsuit made at the close of the plaintiff's evidence and renewed after all the evidence was in.
Upon the whole evidence we do not think that the defendant could reasonably contend that the cover to the coal chute, which was a part of the sidewalk on a much used street and opposite a rooming house, was in a reasonably safe condition when the plaintiff sustained his fall and injury, or that the faulty and defective condition of the cover was not proximately the cause of the said fall and injury. The defendant, *Page 190 
however, contends that it had no notice of this defective condition and was, therefore, not negligent in failing to repair it.
Such a plea is, of course, good against any sudden or recently appearing obstruction or other dangerous condition of which the defendant had no actual knowledge or which it could not have discovered by the exercise of due diligence. Bell v. Greensboro, 170 N.C. 179, 86 S.E. 1041. However, not only upon the principles of the common law but by statutory requirement it is the duty of the defendant to keep its streets, and particularly the sidewalks of the city, in a reasonably safe condition for travelers and those who have the right to use them. Bunch v. Edenton, 90 N.C. 431;Fitzgerald v. Concord, 140 N.C. 110, 112, 52 S.E. 309; Tate v.Greensboro, 114 N.C. 392, 19 S.E. 767; Bailey v. Asheville, 180 N.C. 645,105 S.E. 320; Russell v. Monroe, 116 N.C. 720, 726, 21 S.E. 550. The very existence of such a duty requires a reasonable inspection of the streets from time to time, in order that this condition of safety may be maintained, and in order that dangerous obstructions, holes or surfaces may be discovered and the danger removed. This duty applies to manhole covers, unloading chutes, coal chutes, or any other device forming an integral part of the sidewalk over which pedestrians find it necessary or convenient to pass in the use of the streets. Russell v. Monroe, supra; Tate v.Greensboro, supra.
In the present case it is clear from the evidence as to the warped, rusted, hingeless condition of the coal chute, its habit of rearing up when the foot was placed on one end or sliding down hill, of clanging and clattering when stepped on, that it not only was unsafe for travel but that it had been so for a considerable period of time.
We do not attach much importance to the controversy over the sufficiency of the notice given to a city employee, the driver of a truck whose official capacity is not clear, but we do think that the evidence tended to show that the dangerous condition of the sidewalk had existed for a period of time sufficient to support the inference of implied notice, that is, that in the exercise of reasonable diligence the condition might have been known to the defendant and to justify the consequent finding by the jury that the defendant had negligently failed to perform its duty of keeping the sidewalk in proper repair and reasonably free from dangerous condition, and that this negligence was the proximate cause of plaintiff's injury.Willis v. New Bern, 191 N.C. 507, 132 S.E. 286; Bailey v. Asheville,supra; Seagraves v. Winston, 170 N.C. 618, 87 S.E. 507; Shearman 
Redfield on Negligence, 6th Edition, Vol. 2, section 369.
The testimony of the Superintendent of Streets as to the manner in which the duty of inspection was performed does not lessen this conviction. Contrary to the implications of that testimony, this duty is not *Page 191 
affected by the extent and number of the street or sidewalks. Barr v.Kansas City, 105 Mo., 550, 16 S.W. 483; Lindsey v. Des Moines, 68 Iowa 368,27 N.W. 283; Covington v. Visse, 158 Ky. 134, 164 S.W. 332.
We find
No error.