The undersigned have reviewed the prior Decision and Order based upon the record of the proceedings before Deputy Commissioner George Glenn. The appealing party has shown good ground to reconsider the evidence. The Full Commission reverses the Deputy Commissioner's Decision and Order and enters the following Decision and Order.
* * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
STIPULATIONS
The parties entered into a Pre-Trial Agreement the same is hereby incorporated herein by reference.
* * * * * * * * * *
The Full Commission rejects the findings of fact found by the Deputy Commissioner and finds as follows:
FINDINGS OF FACT
1. On May 2, 1992, plaintiff Robert Michael Blair, a Lieutenant of the Lewisville Volunteer Fire Department, responded to an accident in the northbound lane of U.S. Highway 421 located in Forsyth County.
2. Plaintiff received a dispatch to the wreck on U.S. Highway 421, while at home. As Plaintiff approached from the southbound lane, he saw the accident scene in the northbound lane of the divided highway and pulled his personal vehicle into the grassy median. Plaintiff used his radio to inform the other responding rescue personnel that he had arrived at the scene, exited his vehicle, and started his brisk walk across the median towards the accident.
3. The highway at that location was not lighted and was bordered by trees. The narrow median was graded toward the center. When plaintiff approached the center of the dark median, he took a long stride jump, intending to cross the muddy low point.
4. Plaintiff fell into an uncovered concrete shaft that was located only five yards from the highway's edge. The uncovered rectangular shaft was approximately three feet wide and five feet long. The open shaft was approximately 12 feet deep. The 960 pound concrete cover for the shaft lay several feet away from the open pit.
5. The concrete lid was partially covered with clumps of mowed grass. Fire Chief Williams testified that the clumps of grass did not have earth attached, but were "more like mower discharge." The last time that the median had been mowed was November 1991, approximately seven months before plaintiff's injury.
6. The concrete cover had been on the ground for such a long period of time that the grass and vegetation beneath the cover had not just yellowed and browned with age, but rather had decayed leaving visible bare soil. This bare area was in stark contrast to the grassy area bordering the ground that had been underneath the cover.
7. Mr. Satterwhite, the DOT's Division Engineer, testified that he visited the scene three weeks after the cover had been replaced on the shaft. Even in late May, the ground that had been directly under the concrete cover still contained bare areas that were void of vegetation. There was no displaced sod in the area or indication of recent scraping or gouging on the ground.
8. U.S. Highway 421 in Forsyth County is part of the system of public highways in this state. The Department of Transportation (hereinafter "DOT") is the state agency responsible for maintaining U.S. Highway 421 where plaintiff was injured.
9. The open shaft and its concrete cover would have been visible from DOT maintenance trucks passing the area during the daylight hours. A glance by DOT employees during their routine travels along this section of divided highway would have informed the DOT that there was an uncovered, 12 foot deep concrete shaft, only five yards from the highway's edge. DOT employees traveled this portion of the highway on a frequent basis. A reasonable inspection of the right-of-way would have identified the hazard. The uncovered shaft was an unsafe and dangerous condition. There were no signs or markings that warned of the presence of the open shaft.
10. Norris Cutrell, road maintenance supervisor, was the DOT employee who was responsible for inspecting, maintaining, improving and repairing the culvert shaft where plaintiff was injured.
11. Despite the DOT Division Engineer's claim in a memorandum to his supervisor that "[t]he district routinely inspects drainage structures along our divided roadways to identify those which may have been damaged," DOT employee Cutrell had never inspected the drainage structures along the divided highways.
12. Cutrell had been the maintenance supervisor since May 1988 for the section of the public highway where the accident occurred. During that time, Cutrell had never been told to inspect drainage structures.
13. The DOT was aware that emergency personnel and disabled motorists used the median area. The DOT was also aware that other concrete shaft covers had been displaced along the divided portions of U.S. Highway 421 in Forsyth County.
14. Plaintiff was in the process of doing his duty, under emergency conditions, when he was injured. Plaintiff's attention was focused on the emergency situation as he started to cross the dark grassy median.
15. Plaintiff was exercising reasonable care under the circumstances and did not see the unmarked open shaft the night of May 2, 1992.
16. Plaintiff's decision not to delay the performance of his rescue duty at the emergency scene until someone could escort him across the narrow median with a flashlight was reasonable under the existing circumstances. Plaintiff was not contributorily negligent.
17. The fall into the shaft caused compound fractures of both the tibia and fibula of plaintiff's right leg, with the broken bones puncturing the skin of his leg in two places. It took over an hour for rescue personnel to extract plaintiff from the shaft. During that time, he was repositioned repeatedly so that he could be bound in the extraction device.
18. Throughout the extraction process, plaintiff was without any pain medication.
19. After he was finally removed from the shaft, plaintiff was transported by ambulance to Forsyth Memorial Hospital, and after being seen in the Emergency Room, plaintiff was admitted to the hospital and came under the care of Dr. Stephen B. Lowe. On May 3, 1992, shortly after his admission to the hospital, plaintiff under went his first surgical procedure, which consisted of irrigation and debridement of the fracture sites, and application of a long-leg cast. Dr. Lowe later determined that the cast was not sufficient to adequately reduce the fractures, and plaintiff accordingly underwent a second surgical procedure on May 11, 1992. In that procedure, Dr. Lowe performed a closed reduction of the right tibia, with the insertion of intramedullary nailing. Plaintiff also developed a fever while in the hospital, but the fever abated, and four days after the second surgical procedure, he was discharged from the hospital on May 15, 1992.
20. At the time that he was discharged from the hospital, plaintiff was instructed to keep his leg elevated, and he had to use crutches to ambulate.
21. At the time of the injury, plaintiff was employed as a program manager at Mack Moulding Company in Statesville. Plaintiff was completely out of work from the date of the accident through May 24, 1992, and he was only able to return to work at that time because he could keep his leg elevated at his desk as needed. Dr. Lowe continued to restrict him to light duty through September 21, 1992. Plaintiff's normal daily activities were extremely limited during this time, and he continued to experience substantial pain and limitation as a result of the injury.
22. Because he was continuing to experience problems with his leg, plaintiff returned to Dr. Lowe's office in 1993. Dr. Lowe determined that the hardware that had been inserted at the fractures sites was causing plaintiff discomfort, and on August 5, 1993, plaintiff was again admitted to Forsyth Memorial Hospital and underwent a third surgical procedure. In this operation, Dr. Lowe removed most of the intramedullary nails and screws, but he was unable to remove all of one of the screws. After his surgery, plaintiff was again restricted to using crutches for more than six weeks, and his activities were severely limited.
23. As a result of his injury, plaintiff could not walk unassisted for approximately 150 days. Even after he no longer had to use crutches, plaintiff had a serious limp for at least another two months. Twice he had to go through lengthy and painful rehabilitation process.
24. Plaintiff last saw Dr. Lowe on September 27, 1993, approximately 16 months after the injury. At that time, Dr. Lowe found plaintiff to be at maximum medical improvement, and assigned him a 5% permanent partial disability in his right leg. At the time of the hearing, more than three years after the accident, plaintiff still experienced periodic pain in his right leg at the fracture sites.
25. Plaintiff has five separate scars on his leg as a result of the injury and surgeries he has undergone. Two of the scars are located at this knee, with one being four inches long and the other 2.5 inches long. Plaintiff has two more scars just above his ankle, measuring 3.5 inches and 2.5 inches. Finally, plaintiff has another scar just below the middle of his leg that is 4.5 inches long and 1-1.5 inches wide.
26. Prior to the events which resulted in plaintiff's injuries on May 2, 1992, the named state employee, Norris Cutrell, though his road maintenance crew, knew or should have known that the area of Highway 421 in Forsyth County, where plaintiff was injured which contained an uncovered shaft, should have been covered.
27. As a proximate result of the accident caused by defendant's named employee plaintiff had total medical expenses of more than $19,000.00.
28. The sum of plaintiff's medical damages and the reasonable value of the pain and suffering which the plaintiff incurred as a proximate result of his injury caused by defendant's named employees on May 2, 1992 is $60,000.00.
* * * * * * * * *
Based upon the findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. On May 2, 1992 the negligence of defendant's named employee was the proximate cause of plaintiff's multiple injuries. A state agency is liable for the negligence of its employee as if the agency were a private litigant. North Carolina Tort Claims Act, N.C.G.S. § 143-291.
2. The DOT is the state agency that has the responsibility and duty to maintain the system of public highways in this state. N.C.G.S. § 143(b)-346. The DOT has a duty to maintain the traveled portion of the highways and the right-of-way in a safe condition for motorists and pedestrians. Reid v. Roberts, 112 N.C. App. 222,227 (1993); Phillips v. North Carolina Department ofTransportation, 80 N.C. App. 135, 137 (1980); Mackey v. NorthCarolina Highway Commission, 4 N.C. App. 630, 632 (1969).
3. Plaintiff was an invitee and therefore, the Department of Transportation had a duty to maintain state land in a reasonably safe condition and to warn plaintiff of hidden dangers and unsafe conditions. Newton v. Hanover, 342 N.C. 554 (1996);Smith v. North Carolina Department of NaturalResources, 112 N.C. App. 739 (1993).
4. The DOT's "duty to maintain the right-of-way necessarily carried with it a duty to make periodic inspections." Phillips,80 N.C. App. at 138. Radford v. City of Asheville, 219 N.C. 185,190-91 (1941).
5. Because of the negligence of its employee, the state is liable to plaintiff for damages in the amount of $60,000.00.
* * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission reverses the holding of the Deputy Commissioner and enters the following:
ORDER
1. The state shall pay plaintiff the sum of $60,000.00.
2. Defendant shall pay the cost of this action, which shall include court reporter's services for depositions and hearings and plaintiff's filing fee.
 S/ _______________ COY M. VANCE COMMISSIONER
CONCURRING:
S/ _________________ LAURA K. MAVRETIC COMMISSIONER
S/ _________________ DIANNE C. SELLERS COMMISSIONER
CMV/cnp/rst
3/26/97